*In re* Estate of ISAAC WALKER, Deceased, Respondent, *v.*
THOMAS A. WALKER, Executor, Appellant.

### March 7, 1876.

A person domiciled in Missouri may spend the greater part of a year, or series
of years, at another place without thereby forfeiting his domicile. He
does not forfeit his domicile without an intention, definitely formed, to
abandon his original domicile and take up another; and until this intention
appears, either directly or by some act inconsistent with the retention of
the old domicile, the presumption of the continuance of it is not overcome.

APPEAL from St. Louis Circuit Court.

*Reversed and dismissed.*

*A. J. P. Garesché,* for appellants, cited: Wilson *v.*
Terry, 9 Allen (Mass.), 215; Griffin *v.* Wall, 32 Ala. 160,
161; Church *v.* Rowell, 49 Me. 370; Attorney General *v.*
Rowe, 1 H. & C. 41; Kellogg *v.* Oshkosh, 14 Wis. 623;
Story Confl. (3d ed.) 54, sec. 44, p. 55, sec. 45, p. 56, sec.
45; Westlake's Int. Law, 37, secs. 36, 41, 42; 5 Madd.
Ch. 246, sec. 405; Warren *v.* Thomaston, 43 Me. 418;
Church *v.* Rowell, 49 Me. 370; Adams *v.* Abernathy, 3
Mo. 198; 37 Mo. 198; First National Bank *v.* Balcom *et
al.*, 35 Conn. 351, 354; Board of Supervisors *v.* Davenport, 40 Ill. 208; Frost *v.* Brisbin, 19 Wend. 14; Douglass
*v.* Mayor of New York, 2 Duer (N. Y.), 119; Hallet *et al.
v.* Bassett, 100 Mass. 170; Gilman *v.* Gilman, 52 Me. 165;
Greene *v.* Beckwith, 38 Mo. 387–389; Exchange Bank *v.*
Cooper, 40 Mo. 171; Smith *v.* Rollins, 25 Mo. 410; Otis
*v.* City of Boston, 12 Cush. (Mass.) 50; Johnson *v.* Smith,
43 Mo. 501; West Cambridge *v.* Charleston, 13 Mass. 503;
Harvard College *v.* Gore, 5 Pick. (Mass.) 377; Wag. Stat.
1068, sec. 34; Wiggans *v.* Swett, 6 Metc. (Mass.) 197;
Dearing *v.* Adams, 34 Me. 44; Lewis *v.* Bohlto, 6 Gray
(Mass.), 138; 3 Metc. (Ky.) 74; Montgomery *v.* Sears,
2 Cal. 57; State *v.* Jones, 11 Iowa, 12; Beasley *v.* Prentiss, 13 Smed. & M. (Miss.) Ch. 99, 100; May *v.* Courte-

nay, 47 Mo. 187; Asbury *v.* McIntosh, 20 Mo. 278; Hasselmeyer *v.* Zinc Co., 50 Mo. 181.

*D. T. Jewett*, for appellant, cited: Green *v.* Beckwith, 38 Mo. 384; Cadwalader *v.* Howell, 3 Harr. (N. J.) 138; Hackettstown Bank *v.* Mitchell, 4 Dutch. (N. J.) 516; Pearce *v.* State, 1 Sneed, 63.

*Krum & Madill*, for respondent, cited: Wag. Stat., Art. 1, sec. 81, p. 72; Green *et al. v.* Beck, 38 Mo. 384.

GANTT, P. J., delivered the opinion of the court.

At the December term, 1873, of the St. Louis Probate Court the letters testamentary of Thomas A. Walker, executor of Isaac Walker, were revoked, on the ground that he had become, since the grant of them in 1868, a non-resident of the State of Missouri. He appealed to the St. Louis Circuit Court, which, upon a hearing of the cause, declared him to be a non-resident of Missouri. This finding, and the judgment of revocation consequent on it, being affirmed by the general term, Walker appealed to the Supreme Court, and the cause is transferred to the St. Louis Court of Appeals.

The question was entirely as to the residence, in 1873, of Thomas A. Walker.

There was no dispute that at his father's death, in 1868, he resided in St. Louis. In 1871 he still, beyond cavil, resided here. In that year he married; and, for the alleged reason that his wife's health required it, she has always lived, since the marriage, at Council Bluffs, Iowa. Walker has large landed possessions here, and much business. He has *sojourned* since his marriage, principally, with his wife at Council Bluffs, where, however, he has boarded himself and family, not keeping house.

Many witnesses were examined in the Circuit Court. Warren, deputy county treasurer of Pottawattamie county, Iowa, testified that he knew Walker; that he had resided at Council Bluffs, Iowa, for the last six months (deposition taken May, 1873); that his family resided there, and that

common report made him a resident of Iowa. Thomas Bowman testified that he was city assessor for Council Bluffs ; that he knew Thomas A. Walker ; that, as assessor, he called on Walker, who gave him his name and the number of persons in his family ; he also gave in his real and personal property for taxation ; that a county poll-tax was assessed on him ; and that he was registered as a voter at Council Bluffs. This last was done by witness of his own motion, and not at Walker's request. It is witness' custom to register the names of all whom he considers entitled to vote. The property of Walker assessed was " one county poll and $500 in money and credits." Witness did not know that Walker was aware that he was assessed for a poll-tax.

: A. Spier, examined in New York, October 28, 1873, testified that in 1871 Walker told him, in New York city, that he resided at Council Bluffs, and would not live in St. Louis ; and that, in reply to a question from Mr. Shepley, he said that Council Bluffs was his residence. Witness' knowledge was drawn wholly from statements made to him by Walker and his wife.

William M. Gawtry, examined October 28, 1873, in New York, testified that he was brother-in-law of Thomas A. Walker, and had known him for twenty years and more. In 1868 witness was in St. Louis, and Walker told him that he intended to remove to Council Bluffs. In January, 1873, Walker said he was living in Council Bluffs ; heard him then, in conversation with Mr. Shepley, say he resided at Council Bluffs, Iowa. Witness had written letters to him at Council Bluffs, and received answers dated from that place.

W. N. Nevins, of New York city, testified that he had been employed by Walker, in St. Louis, prior to October, 1871 ; had heard him say that he considered Council Bluffs, Iowa, his place of residence ; that he had voted in Iowa, and could not vote in St. Louis. He was absent from St. Louis ten

months in all between July, 1870, and October, 1871. On three or four different occasions he spent his absences at Council Bluffs, so he told witness. He told witness, in 1871, that he considered Council Bluffs his residence; that he had bought a house there, and his wife was living in it.

On cross-examination he said that, as far as witness' knowledge went, Walker's mode of life while in St. Louis, in 1871, was what it had formerly been. He retained his lodging-rooms, his office, and his boarding-place. First heard him say that he considered Council Bluffs his residence in the fall of 1870. He had owned property there since 1867. Inferred that he resided at Council Bluffs from his having a house there partly furnished, and his wife living in it.

John S. Dorkey testified that he had been in Walker's employment since 1868. He married in 1871. His wife never resided here. When in St. Louis he lives at his old place on St. Charles street. When he has been here since 1871 he has lived as he always did before. Since his marriage he has been back and forth from St. Louis to Council Bluffs. Recently he has spoken of the bad health of his wife. In 1871 and 1872 he was absent, at Council Bluffs, two or three months of each year. His clothing was kept in a wardrobe in his sleeping room on St. Charles street, St. Louis. There has been no difference in his way of living since his marriage from what it was before.

This was the evidence on the part of those asking for the removal of Walker.

On the part of Walker was examined Mrs. Williams, who testified that she was his mother-in-law; that his permanent place of residence was St. Louis; that he had been temporarily and occasionally at Council Bluffs since and before his marriage. Witness occupies a house belonging to Walker's wife, and boards him and his family while he is at Council Bluffs. On account of his wife's bad health witness urged her to remain at Council Bluffs, when she

would talk of going to St. Louis to live. Witness said nothing on the subject to Walker himself. His wife's health has prevented her going there, so far. Heard Walker, in the spring of 1872, say that the unsettled business of his father's estate prevented his removal from St. Louis. Since his marriage he has been fully half his time in St. Louis.

On cross-examination she said that his wife had always lived at Council Bluffs since her marriage. Walker has divided his time between Council Bluffs and St. Louis. Witness boards him and his wife in a house rented by witness from Mrs. Walker. He has kept a horse and carriage at Council Bluffs for his wife and family.

E. S. Williams testified that he was the husband of the last witness; that he had known Walker since 1855; that Walker resided then at St. Louis, and still resides there. He has not changed his residence. Witness knows this from an agreement made with Walker in regard to the place occupied by witness. The agreement is that witness and his wife take charge of the place and board him (Walker) and his wife until the affairs of his father's estate are so far settled that he can make Council Bluffs his home. He has at least temporarily abandoned the idea of removing to Council Bluffs, and intends removing his wife to St. Louis as soon as her health will permit. He has never claimed Council Bluffs as his residence. He has spoken of it as a probable future place of residence. Witness has often conferred with him on this subject during the last half-dozen years. At witness' persuasion he bought the Test place. He intended laying it out, in connection with other property, into lots. Things are so dull here that this design is suspended. He has said that the settlement of his father's estate keeps him in St. Louis. He was asked: "Does he not now intend to move to Council Bluffs as soon as said estate is settled?" He answered: "I think it is extremely doubtful." He was asked if, before his marriage, he did

not promise to remove to Council Bluffs, and replied that he gave no such promise to witness, or to any one, to witness' knowledge. Walker abandoned the idea of making Council Bluffs his home eighteen months or two years ago (this deposition was taken May 26, 1873), long before this controversy started. Walker's name is borne in the Council Bluffs directory. It was placed there without his consent.

W. C. James testified that he resided at Council Bluffs, Iowa, and was an attorney at law; that he had known Walker since 1856; that he resided in St. Louis; that witness, within four years, had had frequent conversations with Walker, touching a future change of residence from St. Louis to Council Bluffs. He has in all that time claimed St. Louis as his residence. He has said that if property advanced in St. Louis, and he could sell his property there, and if the prospects of Council Bluffs improved, he would come to Council Bluffs; but that property was dull of sale in St. Louis, and it was extremely doubtful if he could ever carry out this plan. This was in the summer and fall of 1872. Two years ago, he said he had abandoned the design of coming to Council Bluffs.

Isaac H. Walker, brother of Thomas A. Walker, examined in New York, October 28, 1873, testified that, from 1851 to the date of his examination, Thomas A. Walker has constantly resided in St. Louis. This witness spoke of the satisfactory manner in which Thomas A. Walker had managed the business of his father's estate, and of the wish of every one, except Gawtry, a brother-in-law, that he should continue in charge of it. Witness had been deceived by Gawtry into signing a paper asking for the removal of Thomas A. Walker on the score of non-residence. Afterwards he visited St. Louis and found Gawtry's statements untrue, whereupon he revoked all that he had said or written relating to Thomas A. Walker's removal.

Van Studdeford, for Thomas A. Walker, testified that he was a physician; knew Thomas A. Walker intimately. He

resided in St. Louis as certainly now as before 1870. Witness resides here, and has known Walker for many years.

Joseph O'Neil resides in St. Louis; has known Walker from twenty to thirty years. He resides in St. Louis.

John Riggin and John J. Murdoch testified to the same effect.

R. W. Powell also testified in the same way.

It appears by the five last witnesses that Thomas A. Walker has always spent part of each year away from St. Louis; that he has large property in Iowa, and goes there often, but not more frequently, and makes no longer visits, since 1871 than before, but still keeps his residence here, his lodging-room, office, etc.

John R. Shepley testified that he was of counsel for the defendants in the case of *Cabanné* v. *Walker*. All the defendants except Thomas A. Walker were non-residents. There was talk of removing the case to the United States Circuit Court. The memory of witness is indistinct. Some one suggested that Thomas A. Walker was a non-resident. Don't recollect his answer. After this conference no attempt was made to remove the cause. He (Walker) lives now as he did before his marriage.

Thomas A. Walker testified that he did not tell either Gawtry or Spier that he had removed to Iowa, or was living there with his wife, or did not reside at St. Louis; nor did he say at Mr. Shepley's office that he was a resident of Iowa. Never told Nevins that he had voted in Iowa, and, in fact, never did vote there; never was registered there until Bowman did it without witness' knowledge; never paid a poll-tax there; never voted there; and has always, for the last twenty years, made St. Louis his home. Has not voted here because he was not registered. His name was placed in the Council Bluffs directory without his knowledge. He always voted in St. Louis until compelled to register. He keeps his wardrobe here, and, on going to Council Bluffs, takes such clothes as he needs. Purchased

the house in which he lives at Council Bluffs before his marriage, and settled it on his wife since his marriage. It is leased to Dr. Williams on condition of his boarding witness. This lease was dated November 1, 1870. There has been no formal renewal of this lease, but the same arrangement has since continued, and exists at this day. Witness spends, on an average, one-third of his time at Council Bluffs. On cross-examination he said he had no charge of the house; did not employ the servants. His wife employs a nurse girl. Has a carriage and horses at Council Bluffs for the use of his wife and child. When at Council Bluffs he often has had washing done. Witness has never kept house here, nor has his wife ever lived here

The court gave the following declarations of law :

"Although the court may find from the evidence that Thomas A. Walker resided in the city and county of St. Louis, Missouri, at the time letters testamentary were granted to him, by the St. Louis Probate Court, upon Isaac Walker's estate, the said Thomas A. Walker being then an unmarried man, yet, if the court further finds from the evidence that said Thomas A. Walker, in the year 1870, purchased a dwelling-house in the city of Council Bluffs, Iowa; that he afterwards, in June, 1871, married his wife there, and, after his marriage, gave his dwelling-house to his wife ; if his wife, from that time to the present, has, under an arrangement made by her husband with his father-in-law, boarded with her father and mother in said dwelling-house at Council Bluffs, Iowa; that, since his marriage, said Walker has passed a portion of his time with his wife, and furnished, at Council Bluffs, a horse and carriage for the use of his wife, and, whenever at Council Bluffs, boarded and lived with his wife in the same house and family, then the court should find that said Thomas A. Walker had become a non-resident of the State of Missouri since the grant to him of said letters testamentary."

To the giving of which Thomas A. Walker duly excepted.

He then asked the following declarations of law, which the court refused, and he excepted thereto :

"The court instructs the jury that one may be said to have a domicile in that place which constitutes the principal seat of his residence, of his business pursuits, connections, attachments, and of his political and municipal relations. Domicile, in any place, is acquired by residence there of a person with the intent to regard and make that place his home. Domicile, in any place, is abandoned by a removal by a person from a place of residence with an intention not to return there and to make his home. Both in acquiring and abandoning a domicile, the act and intent must concur. A person always has a domicile at some place, and, therefore, a domicile once fixed continues and attaches to a person until another domicile is acquired and substituted therefor, although as to such domicile there has been a concurrence of the act and intent of abandonment. The acts and intents of persons, in the matter of their domicile, may be inferred from their declarations and conduct.

"If, at the time of letters granted Thomas A. Walker, the executor was a resident of this city, such residence, in the absence of proof to the contrary, is presumed to continue, and temporary absences, or temporary visits to any other State, however frequent or long continued, and whatever the motive, indicate no change of residence unless such absence and such visits were with the intention to change his place of residence, which intention must have the concurrence of an actual change as well as the intention of a change ; and his acts, as well as his declarations at the time of the acts, are to be weighed by the jury in the conclusion they reach, whether there was or was not a change of domicile.

"The court instructs the jury that the domicile of a person is the place where he lives, regarding it at the time as his home, and such a domicile is only lost when the resident leaves it with an intent not to return and reside there again. That, to constitute a change of domicile, both the intent and

the act must concur; an intention to remove without an actual removal is not sufficient.''

. When the case was called for trial in the Circuit Court, Walker demanded a jury, which the Court refused, he excepting to the refusal.

The requirement that administrators and executors should be residents of the State, and disqualifying for that office all who do not so reside, became law in Missouri in 1845. Rev. Code, 1845, Art. 1, sec. 58, p. 72. Prior to that time there was no disability on the part of a non-resident to administer, in Missouri, on the estates of persons domiciled and dying here.

There is a difference between a residence and a domicile, which, however, may not be capable of easy definition—that is to say, it may be difficult to define both terms in such manner as to escape criticism. But every one can see at least this distinction : A person domiciled here may, for the sake of his health, reside one or more years in some place the climate of which is supposed to be more favorable to his constitution. In such cases it would be harsh and unnatural to consider the person thus residing abroad to have forfeited his domicile here, or in any proper sense to have become a non-resident of Missouri, unless some intention, manifested by some act of abandoning his residence here, were shown. So long as a person previously domiciled and residing in Missouri does no act to indicate his intention to cease to be a resident of this State, and to remove elsewhere, much weight is due to the presumption that he continues to be a resident of Missouri, notwithstanding prolonged absences extending to the greater part of the year. If no such absences are shown, and no unequivocal act occur accompanied by a declaration of intention to change his residence, this presumption is not overcome.

In the case at bar, we are of opinion that the court properly refused to impanel a jury to determine whether Thomas A. Walker had or had not ceased to reside in Missouri.

This opinion renders it necessary that we should consider the testimony adduced, and determine that question without regard to the declarations of law made by the Circuit Court. Our task is somewhat increased by this view of the matter. The instruction given by the Circuit Court we think erroneous. It makes residence or non-residence to depend on several equivocal matters of fact, without the concurrence of any intention on the part of Walker. It would make a man who, up to the year 1876, resided in St. Louis, by marrying a wife in Illinois in (*e. g.*) January of that year, and, instead of bringing her to St. Louis, his place of business, boarding her at the house of her parents or a stranger in Illinois, furnishing her with a horse and carriage, and becoming the purchaser of the property occupied by her in Illinois, a non-resident of Missouri in the course of a few months, notwithstanding that his business, his interests, the bulk of his property, and the exercise of all his political privileges, as well as his declared intentions, indicated Missouri as his home and residence, and Illinois as his temporary place of sojourn. If this be law, the decision of the Supreme Court of New Jersey (*Hackettstown Bank* v. *Mitchell*, 4 Dutch. 516) was palpably wrong. But our duty is, not to criticise the abstract views entertained of the law of domicile and residence by the Circuit Court, but to determine, on appeal from its decision, whether the evidence adduced justified it in the conclusion at which it arrived in the case of Thomas A. Walker.

We are of opinion that the evidence does not justify the conclusion reached by the Circuit Court. The affirmative was on those who were seeking the removal of the executor, and who showed cause for his removal, to wit, his having ceased to be a resident of Missouri. The evidence, in our judgment, greatly preponderates in favor of his not having so ceased. Excluding the testimony of Mr. and Mrs. Williams, and Mr. Walker himself, we think that the preponderance exists. When theirs is thrown into the

scale, there is a removal of all doubt. There is much to support the testimony of Mr. Walker. One of the strongest points on the side of the petitioners for his removal is his supposed declaration to Mr. Shepley that he was a non-resident of Missouri. Both Mr. Spier and Mr. Gawtry swear to this. Mr. Shepley does not remember what Thomas A. Walker said, but does remember that some one else suggested that Walker resided in Iowa, while Walker expressly and pointedly declares that he said no such thing. Thus far there is a preponderance against Thomas A. Walker. But we are further told that the question was about removing to the United States Court a cause to which the legal representatives of Isaac Walker were parties defendant; that all of these representatives except Thomas A. Walker were plainly non-residents of Missouri; that defendants wished to remove cause to the Federal Court; that, if all the defendants had been non-residents, this might have been done, and yet that it was not attempted. It seems difficult to come to any other conclusion than that the citizenship of Thomas A. Walker was the obstacle to the removal, and that some of the other parties interested— not himself—attempted to suggest that he was a citizen of Iowa.

Unless Thomas A. Walker, Isaac H. Walker, and Mr. and Mrs. Williams are not only mistaken, but completely wrong, there is no warrant for saying that Thomas A. Walker has ceased to reside in Missouri. Their testimony apart, the evidence of such change would scarcely be sufficient; but, leaving out all the other witnesses for the executor, the testimony of these four is more than sufficient to outweigh a far stronger *prima facie* case than was made by the petitioners. Much of the evidence adduced to show that the executor had changed his residence was wholly inadmissible. That some third person, without his knowledge or concurrence, had put his name down on the register of voters, or in the city directory, scarcely deserved to be

characterized as evidence at all ; that he furnished his wife
with a carriage was equally worthless.   We see not the
smallest reason to discredit what the four witnesses named
above have sworn to ; we see as little to lead us to conclude
that the Circuit Court discredited it.   All that we do see on
that head is that the Circuit Court applied to the facts in
evidence principles of construction which we regard as
erroneous.   We have already indicated our views on this
head.   The subject is discussed at length, with a copious
citation of authorities, in 1 American Leading Cases (notes
to the case of *Guier* v. *O' Daniel*, 557, and following).   The
judgment of the Circuit Court is reversed and final judg-
ment is given in this court dismissing the proceedings.   All
the judges concur.