MARY L. TYLER, Respondent, v. JOHN G. PRIEST, Administrator, Appellant.

St. Louis Court of Appeals, May 22, 1888.

ADMINISTRATION—WHAT ASSETS SUBJECT TO DEMANDS OF CREDITORS. In a proceeding against an administrator to compel payment of a judgment which has been ordered by the probate court to be paid in the regular course of administration, the creditor can make no claim upon assets which the administrator had disbursed to distributees and for expenses of the estate, before the creditor's demand accrued. But where the administrator has collected rents from lands previously partitioned to some of the distributees, and, having incorporated them with the funds of the estate, has disbursed the amounts in the course of his administration, and has afterwards collected the amount of a judgment against the representatives of a former grantor for breach of a covenant of warranty attached to the lands, the sum so collected is not to be regarded as a trust fund in the administrator's hands for the benefit of the distributees whose rents were received and disbursed by him, but must be treated as assets of the estate, liable for satisfaction of the judgment which the probate court has ordered to be paid.

APPEAL from the St. Louis Circuit Court, HON. LEROY B. VALLIANT, Judge.

*Affirmed.*

W. H. CLOPTON, for the appellant: The personalty of Isaac Walker's estate was exhausted long prior to notice of the claim of plaintiff. The funds in the administrator's hands, must be distributed among the devisees whose realty contributed to the payment of the Houghan· dower, according to their respective interests. *McLeod v. Davis*, 83 Ind. 263; *Virdwell v. Virdwell*, 84 Ind. 224; *Towle v. Swanzy*, 106 Mass. 100; *Heir v. Priest*, 15 Mo. App. 591. Heirs of a warrantor are liable *pro rata* for breach of the ancestor's covenant of warranty. A judgment cannot be had against one for the whole debt. *Walker's Adm'rs v. Deaver*, 79 Mo. 664. The fund in the hands of the administrator consists of rents from the shares of two·

out of eight devisees, in the estate of Walker. The rents in hands of the administrator must be regarded as real estate devised to the two devisees. The devisees of Isaac Walker take their shares in the real estate discharged of the special debts of the testator. *Sauer v. Griffin*, 67 Mo. 657. The rents are not assets for the payment of specialty debts. They must be treated as a part of the realty which was devised to the two devisees from whose shares the rents were collected. Devisees in this state, at the time of the death of Isaac Walker, took their shares in the realty discharged of the specialty debts of the testator, as at common law. *Sauer v. Griffin*, 67 Mo. 657. Rents of real estate are not assets for the payment of debts and the heirs of a deceased insolvent even, are entitled to the rents of the real estate of the deceased up to the time when it is sold for the payment of debts. *Gibson v. Farly*, 16 Mass. 280 ; *McCoy v. Scott*, 2 Rawle, 222 ; *Stearns v. Stearns*, 1 Pick. 157 ; *Newcomb v. Stebbins*, 9 Met. 540 ; *Palmer v. Palmer*, 13 Gray, 326. Even if the administrator has paid debts with such rents they can be collected of him by the heir. *Griffith v. Beecher*, 10 Barb. 432 ; *Hawkins v. Kimball*, 57 Ind. 42 ; *Goodrich v. Thompson*, 4 Day, 215. In *Scudder v. Ames*, 89 Mo. 511, the court say that an administratrix is not authorized to collect rents. True it is, that in *Gamble v. Gibson*, 59 Mo. 585, and *Dix v. Morris*, 66 Mo. 514, our Supreme Court have held that in making settlements between administrators and the heirs the sureties of the former will be held liable on their bond for rents collected by the administrator. They are treated as assets for that purpose only.

HITCHCOCK, MADILL & FINKELNBURG, for the respondent : The petitioning creditor having established her demand for $1,389.02 against this estate is entitled to be paid out of any assets in the hands of the administrator sufficient to satisfy the same. The last annual settlement filed April 23, 1887, (since this motion was

heard in the probate court ), shows a balance of $10,412.78 in the hands of the administrator, $5,733.03 of which is disputed and $4,679.75 of which is undisputed. There being no other unsatisfied debts, either one of the above amounts is sufficient to cover this claimant's demand in full. The disputed item of $5,733.03 was properly charged against the administrator by the probate court. The undisputed item of $4,679.75 was not received from the rents of real estate but from a personal judgment recovered by the administrator against a third party. The administrator cannot appropriate assets coming into his hands and withhold them from creditors for the purpose of equalizing supposed previous equities between devisees. The claims of creditors are prior in right and superior in grade. The administrator has with the consent of the devisees retained a portion of the realty and has collected and is still collecting the rents thereof; has commingled these rents with the other personal assets and income for many years; has expended the personalty indiscriminately in course of administration for various purposes, and shows a balance in his hands sufficient to pay the demand of this claimant. The administrator cannot now recoup on the balance thus shown to be in his hands for the purpose of reimbursing devisees or himself to the exclusion of creditors, especially in view of the fact that a part of the balance now in his hands consists of money collected on a judgment which is a personal asset, and in its nature primarily applicable to the payment of debts. The administrator in conjunction with the devisees has by his conduct, precluded any right of action against the estate up to this time by paying the annuity, and he now prevents a resort to the statutory power to sell real estate by reporting personal assets sufficient to pay the present claim. Petitioner cannot resort to the realty by the statutory mode because the administrator makes an annual showing of money on hand, but when she asked to be paid out of the fund in his hands the administrator says: It represents realty and is not applicable to the payment of debts. This is

an inconsistent and inequitable position, and the administrator should be estopped from making such a defence against this creditor. The question whether devisees are liable on the warranty of their ancestor, in this state, does not arise in this proceeding. Pending administration, lands are assets subject to the debts of the deceased. Rev. Stat., sec. 146 ; *Shaw v. Nicholay*, 30 Mo. 99, 107 ; *Carson v. Walker*, 16 Mo. 68, 87. Partition of lands before final settlement of the estate does not withdraw them from liability for the debts of the deceased. Rev. Stat., sec. 3350.

THOMPSON, J., delivered the opinion of the court.

The plaintiff recovered a judgment against John G. Priest, administrator *de bonis non, cum testamento annexo*, of the estate of Isaac Walker, deceased, in the circuit court of the city of St. Louis, on the twenty-eighth of October, 1885, for the sum of $1,389.02. The action which resulted in the recovery of this judgment was commenced on the twelfth of August, 1884. It was brought under section 191, Revised Statutes, to establish in the circuit court a demand against the estate of Isaac Walker, deceased. This demand consisted of the payment by the plaintiff of two instalments of money to a dowress, the same being instalments of an annuity charged by a judgment of the St. Louis land court, in 1864, upon land conveyed by the defendant's testator, Isaac Walker, deceased, to the plaintiff, in the year 1857, with covenants of warranty. In other words, it was an action for damages for the breach of a covenant of warranty against incumbrances. From the judgment of the circuit court, rendered in that action, an appeal was prosecuted to this court, where the judgment of the circuit court was affirmed on the twentieth of April, 1886. *Tyler v. Priest*, 21 Mo. App. 685, erroneously reported as *Taylor v. Priest*. In the concluding part of our opinion in that case, we held that the question of the classification and payment of the judgment, including the question whether there were any assets available

for its payment, or whether the lands of the testator in the hands of his devisees could be subjected to its payment or not, were questions relating to the *execution* of the judgment, which could not be determined in that action. These questions present themselves for determination in the present proceeding.

After the judgment of the circuit court had been thus affirmed, it was presented to the probate court, and that court entered an order directing that it should be paid in due course of administration. The administrator declined to pay it, claiming that there were no funds in his hands available for that purpose. Thereupon the plaintiff filed her motion in the probate court, praying for an order upon the administrator to pay it. This motion was overruled by the probate court, after a most careful examination of the questions involved and after the filing of a very learned and able opinion upon those questions, which we have had the advantage of reading, but with which we have not been able entirely to agree. The plaintiff appealed to the circuit court where the motion was heard *de novo*, as required by the statute.

In support of her motion in the circuit court, the plaintiff showed that, according. to the last annual settlement, filed by the administrator on the twenty-third of April, 1887, he had in his hands a balance of $4,679.75, to which the probate court had added the amount of $5,733.03, for error in settlement, thus making the total amount charged against him to be $10,412.78.

This surcharge of $5,733.03, made by the probate court, arose under the following circumstances : Thomas A. Walker, executor of Isaac Walker, deceased, was removed by the probate court on account of his being a nonresident of the state, and John G. Priest, the present administrator, was appointed administrator *de bonis non, cum testamento annexo*, in his place. Walker appealed from this judgment of removal, and it was reversed by this court. *In re Walker*, 1 Mo. App. 404. Thereupon Walker was reinstated as executor, where-

upon, on settlement between him and Priest, there was found to be in Priest's hands assets belonging to the estate to the amount of $5,394.21, for which the probate court rendered a judgment against him that he pay it over to Walker. Subsequently Walker was again removed and Priest re-appointed. Thereafter another settlement took place between Walker and Priest, in which it appeared that Priest had not paid over to Walker the amount above mentioned, to-wit, $5,394.21. Nor had he, in his own settlements, accounted therefor, nor charged himself therewith. On motion of some of the legatees, the probate court, in June, 1880, ordered Priest to charge himself with said sum, and in January, 1881, added the same to the balance of his annual settlement for that year. In his next annual settlement, which took place in April, 1882, he charged himself with this sum of $5,394.21, and, in explanation of his reason for not charging the judgment against himself in his former settlement, he showed that an effort had been made to wind up the estate by a settlement among the heirs and the devisees, which had failed of accomplishment; and he claimed credit for certain expenditures constituting the items in issue on the settlement between him and Walker, which resulted in the judgment of the probate court in favor of Walker's estate, and against him, for the sum of $5,394.21, as above stated, and for sums distributed to the legatees in the aggregate sum of $5,733.03; and he produced a voucher in support of the same signed by five of the legatees, in which they undertook to authorize him to take credit for this sum in his settlement, and waived all objections thereto. This charge and credit were stated in his settlement as follows:

"Cash paid sundry items for costs, attorney's fees, and other disbursements specified in the account and ordered filed as an exhibit marked 'O' herewith, as per authorization..............$5,733 03"

'RECAPITULATION.

"Disbursed on acc. blk. 808 and other
        property in Cabanne & Walker's
        sub-division, being blocks 796
        and 838 per statement.......... $2,314 97

The "exhibit O" thus referred to was as follows:

"The undersigned, legatees under the will of Isaac Walker and distributees of said estate, by this instrument, consent and authorize John G. Priest, administrator *de bonis non* of said estate, to credit himself in his settlement account with said estate, in and before the St. Louis probate court, with the annexed statement and account, amounting in the aggregate to fifty-seven hundred and thirty-three 3-100 dollars, and we waive all objection thereto, and authorize the said St. Louis probate court to allow the same in the settlement of said administrator's accounts.

"[Signed]        WM. M. GAWTRY, Trustee,
                "PETER I. NEVIUS, Trustee,
                "S. F. JENKINS, Trustee,
                "ARCHIBALD MACLAY, Trustee.
                "G. W. BULL,
                "R. MACLAY BULL.

"New York, Jan. 6, 1882."

"Disbursed, items disallowed by St. Louis probate court:

Krum & Patrick......................$ 250 00
Hall, reporter .....................   10 00
Clinton, Hall & Brewer, for depositions.   38 50
Other small items...................   57 80
Disbursed, accounts of heirs, per state-
        ment...... .......... ..........  2891 91
                                        ———————
        Total........................ $5733 03

"Filed April 1, 1882."

When this credit and so-called "authorization"

were presented, the probate court declined to pass the credit, but added the amount of $5,733.03 to the balance as stated by the administrator, making it $14,733.46, instead of $8,997.43, as stated by Mr. Priest. In each successive annual settlement made by him since that time, he has ignored the action of the probate court in the above matter, but the probate court has, in each instance, surcharged his account with the said sum of $5,733.03, by adding the sum to the balances as successively stated by him.   Thus the matter stood at the time of the ninth and last annual settlement prior to the trial in the circuit court, which was filed on the twenty-third of April, 1887, as already stated.

It is now claimed by the plaintiff that this item of $5,733.03, consisting, according to the settlement of Mr. Priest, of moneys disbursed by him for the expenses of litigation, on account of real estate, and to the legatees, should be treated as so much money in his hands subject to the payment of debts, and that the act of the probate court in disallowing the credit and surcharging him with it in each of his annual settlements, should be conclusive upon the question of his obligation to pay this judgment.   In his opinion, to which we have already alluded, the learned judge of the probate court took a different view of this question, in the following language : "The court refused to allow this credit, first, because the authorization did not come from all the legatees, and next, and principally, because there was no proof that all the debts had been paid, and because, on an annual settlement, the court could not conclusively adjudge the question.   In every subsequent settlement the administrator asked, and the court refused, the allowance of this sum as a credit, deferring a decision of the question to the final settlement.   There is, therefore, a difference between the account as stated by the administrator, and as sanctioned by the court, of the sum of $5,733.03.   This item, it is claimed by the creditor [meaning this plaintiff], does not constitute a proper credit, resting, as it does, upon a private arrangement

between the legatees and Mr. Priest, which cannot affect the rights of creditors. Nothing is clearer; that is. the precise ground upon which the court declined to allow the credit; *prima facie*, it is not allowable, either against creditors or against the legatees, who may not have signed it, and cannot be allowed, or disallowed, conclusively until the parties whose rights are affected thereby are before the court, or have such notice as will invest the court with jurisdiction over them. It does not follow, however, that the amount surcharged constitutes assets available for the payment of debts of which the administrator had no notice at the time the disbursements were made. These disbursements assumed or admitted by the legatees, the signing of the voucher clearly estops them from denying their validity; they are, therefore, valid as distribution or payment of legacies, which none can dispute save those who have a paramount right to the assets distributed. It may be that a portion of the sum is justly coming to the legatees who have not signed the voucher, although this is not probable, for a reason to be stated in connection with another point hereafter. But it is just as clear that subsequently proved claims cannot be charged against the amounts so paid out, as it is that the rights of creditors prior thereto were not thereby affected."

We incline to agree with the views of the learned judge of the probate court touching the matter, so far as this item is concerned. This surcharge which the probate court has made against the administrator may or may not be assets subject to the payment of debts, accordingly as the propriety of it shall be determined upon a final settlement, where all the interested parties are before the court. While the annual settlements of an administrator are not evidence in his own favor (*State to use v. Roeper*, 82 Mo. 57), it is equally true that the orders of the probate court approving or disapproving the same are provisional merely; they are not a judgment; they conclusively establish nothing for or against ,him. *Ibid.* No appeal may be taken from such an

order, but the annual settlements are open and subject to review upon final settlement. *North v. Priest*, 81 Mo. 561; s. c., affirmed, 9 Mo. App. 586; *Ritchey v. Withers*, 72 Mo. 556. If this demand had existed at the time when Priest made the disbursements for which he thus claims credit on the authorization of some of the legatees, and it had been presented to him for allowance and he had nevertheless improvidently made these disbursements, they would constitute no defence to an application for an order upon him to pay this demand; because this demand would have been preferred, on any theory, to the greater portion of the disbursements for which he thus claims credit, and he would have made them in violation of law and would have no one to blame but himself. *North v. Priest, supra; Bassett v. Slater*, 81 Mo. 75.

It is argued on behalf of the plaintiff that, as Priest knew of the existence of this item and recognized it by making annual payments of this annuity to Mrs. Houghan, the case stands on the same footing, except in respect of classification, as though it had been formally presented to him, or he had waived a formal presentation, in writing, under the statute, prior to the making of such disbursements. We do not think that this view is tenable, for the reason that no part of this demand existed at all until long after the time when Priest made these disbursements. This follows from what we held in *Tyler v. Priest*, 21 Mo. App. 685, in which we affirmed the judgment establishing this demand. We there held that the statute of limitations of two years in the administration law did not apply to this demand, because it could not have been so presented as to save the bar of the statute. "It did not arise until the payments of the annual instalments had actually been made to the dowress by the plaintiff. Until that time, no demand could have arisen from the nature of the case. It was not a case of *debitum in praesenti solvendum in futuro*, because the liability to pay the successive instalments was contingent upon the survival of the

dowress.   She might die, and then nothing further
would be paid.   The payment of each instalment was
in the nature of a fresh eviction, so far as giving a right
of action was concerned, and the statute of limitations
in such a case runs only from such payment.''   It is true
that, down to 1883, Mr. Priest and his predecessors
recognized and paid the successive claims of the plain-
tiff for moneys advanced annually by her to pay the
annuities of Mrs. Houghan, and took credit therefor in
their final settlements.   But these successive instalments,
as we held in the foregoing reasoning, were in the nature
of separate demands which did not exist as demands
until they accrued.   Until that time they were contin-
gencies merely—demands which might or might not
accrue with each recurring year, depending upon the
concurrence of two circumstances,—the continued life
of Mrs. Houghan and the payment of the annuities to
her by the plaintiff.   It cannot be concluded from these
premises that Mr. Priest was under an obligation to
retain in his hands moneys to meet these contingent
demands, and that his failure to do so brings him within
the principle of *North v. Priest, supra ;* and *Bassett v.
Slater, supra.*

If we lay this disputed item out of view, it never-
theless appears that, independently of it, there was,
according to the last annual settlement of Mr. Priest, in
his hands the sum of $4,679.75, which was a part of a
larger sum collected by him as administrator, on the
third of November, 1886, upon a judgment recovered by
him as administrator in a suit brought in behalf of the
estate against James A. Deaver and others for damages
sustained by the estate of Walker by a breach of war-
ranty on the part of the ancestor of the Deavers.   The
nature of this judgment will appear from the case of
*Priest v. Deaver,* 22 Mo. App. 276, where the judgment
of the circuit court was affirmed after directing a *remit-
titur.*   See also another similar case in 5 Mo. App. 139,
and 79 Mo. 664.   This judgment was nothing more than
a recovery over by Priest, as the personal representative

of Isaac Walker, deceased, for his covenant of warranty made to Walker, broken by the incumbrance of Mrs. Houghan's dower interest. It, therefore, grew out of the same matter as the judgment which the plaintiff is endeavoring to coerce the administrator to pay in this proceeding. It was a judgment for the proportionate share of two of the heirs of Larkin Deaver, deceased, of eight annual instalments of six hundred and fifty dollars each, which the plaintiff, as administrator of Isaac Walker, deceased, had paid to Mrs. Houghan, to discharge the annuities into which her dower interest had been converted under the judgment of the land court of St. Louis.

The theory on which it is claimed that the money collected upon this judgment, so recovered by Priest, is not assets belonging to the estate, is that this money has been really collected from rents of the real estate of two of the devisees, previously set apart to them in partition, but who voluntarily left their estate in the hands of the administrator. The theory is that, having the right to take possession and collect the rents for themselves, they nevertheless allowed the administrator to remain in possession and collect the rents; that these rents were disbursed in the payment of Mrs. Houghan's annuity; that this judgment in the case of *Priest v. Deaver* was simply a recovery back by Priest of the money so disbursed, from the heirs of Deaver upon their ancestor's covenant of warranty; that, although Priest collected these rents as administrator and charged himself with them in his annual settlements, and disbursed them in payment of a demand which was undoubtedly a liability of the estate of his testator, yet, it is nevertheless to be regarded that he held these rents as trustee for the two devisees of his testator, and not as administrator, and that, although he paid them out in his character of administrator, in satisfaction of a demand against the estate of his testator, they did not lose their character of a trust fund; and that, when he recovered the judgment over against the heirs of Deaver,

he is to be regarded as having merely recovered back this trust fund so paid out. We confess ourselves entirely unable to follow this reasoning. Mrs. Houghan's annuities were a liability of the estate of Isaac Walker, during her lifetime. If the personal assets were exhausted, these annuities, as fast as they became due, became liabilities chargeable upon the lands. The administration is not yet closed; and while an administration is open, the lands, as well as the chattels, are assets for the payment of the debts of the deceased. If these two distributees neglected to take possession of the lands which were set apart to them while the others took possession of theirs, and if they allowed the administrator to collect their rents and disburse them as administrator, that is their own affair. It does not entitle them to lay hands upon a judgment recovered by the administrator, in his character as such, and prevent its distribution to creditors of the estate. They may have allowed the administrator to take this course in order to forestall an application to sell their lands in discharge of Mrs. Houghan's annuities. It may have been done, for aught we know, in pursuance of an arrangement among all the devisees, by which those who thus allowed the rents of their properties to be used, were reimbursed by the others. We do not know from this record why it was that they took this course, nor is it at all material. Having allowed their lands to remain in the hands of the administrator, and having allowed him to collect the rents of them and treat them as moneys belonging to the estate, and disburse them as such, they cannot be allowed now to recoup themselves by laying their hands upon this judgment, in preference to a creditor of the estate. See *Brigham v. Elwell*, 14 N. E. Rep. 780; s. c., 145 Mass. 520, and cases cited. Compare *Lewis v. Carson*, 93 Mo. 587.

Here is an annual settlement of the administrator, which admits that he has this amount of assets in his hands belonging to the estate. Here is a creditor of the estate holding a judgment for a much smaller amount

than this amount of personal assets. If she cannot have execution against the administrator, what remedy has she? She cannot get an order to sell land, for it appears from the records of the probate court that there are personal assets enough to satisfy her demand. For the same reason, she cannot get any relief by going into the circuit court in an original proceeding. *Pearce v. Calhoun*, 59 Mo. 271.

But who is it that is setting up this defence? The distributees are not before the court. It may well be that cases might arise where the administrator would be bound to assert the rights of the distributees of the estate. But how can he, after collecting this amount of assets in his character of administrator, and charging himself with it as such, turn around and face a creditor and say: "This was all a myth; although I sued for it as administrator, and recovered it as administrator, and possibly levied it by execution as administrator, and charged myself with it as administrator, and when it is disbursed will undoubtedly receive my commissions for disbursing it as administrator—yet, notwithstanding all this, the appearance of my holding it as administrator is merely an appearance. It is a fiction—I really hold it as trustee for these legatees, and they are to be preferred to you, and if you want to collect your judgment, you can go into the probate court with a petition to sell land to pay it, provided you have that right at all. The partition proceedings interpose no bar. It is true that, when you get there, they may oppose you with the records of the probate court, showing that there are sufficient personal assets to satisfy your demand; but what have I to do with that?" This process of reasoning, by which a trust fund is one thing for one purpose and another thing for another purpose, does not commend itself to our approval.

All the judges concurring. the judgment of the circuit court is affirmed.