Blank v. Nohl.

BLANK, *Appellant*, v. NOHL, *Administrator*.

In Banc, November 14, 1892.

1. **Marriage:** NATURE OF THE RELATION. Marriage is more than a mere civil contract; it is a matter of state concern, and, when the relation is created, it cannot be dissolved by agreement of the parties.

2. ———: AGREEMENTS, TO PROMOTE DIVORCES: PUBLIC POLICY. An agreement that the defendant in a divorce suit will not make a defense, or having for its object the dissolution of a marriage, or designed to promote and facilitate a divorce is void as being contrary to public policy.

3. ———: ———: ———. So any promise founded on such agreement is void and will not be enforced.

4. ———: ———: ———. A husband against whom suit had been brought for a divorce obtained a decree on his cross-bill in his favor. He then agreed that if the plaintiff would not move for a new trial he would furnish her with a permanent support. This agreement was made after the decree and without any previous understanding, but within the four days allowed for moving for a new trial. *Held* void as an agreement made to promote or facilitate a divorce.

*Appeal from St. Louis City Circuit Court.*—HON. J. E. WITHROW, Judge.

AFFIRMED.

*Edmond A. B. Garesche* for appellant.

(1)   While it is true that the agreement provides that the amount to be paid to appellant "cannot at any time or under any circumstances be compounded or commuted for a fixed sum as other annuities are," yet, as a person must contract with regard to his possible death and the administration of his estate, such agreements, so far as they seek to restrict the legislative enactments, have been held to be of no binding force. Revised Statutes, 1889, sec. 203; *Schmeiding v. Doellner*, 13 Mo. App. 228.   (2)   The consideration named in the agreement was both a sufficient and valuable one.   The promise of the appellant was valuable to the respondent's intestate in that it saved him the useless annoyance and expense of being represented upon the motion for a new trial.   The one promise, therefore, was a good consideration for the other, unless hers was against public policy. *Moss v. Green*, 41 Mo. 389; *Davis v. Calloway*, 95 Am. Dec. 671; 1 Parsons on Contracts [6 Ed.] sec. 448; *Babcock v. Wilson*, 35 Am. Dec. 263; *Cook v. Bradley*, 18 Am. Dec. 79; *Cobb v. Cowderey*, 94 Am. Dec. 370; *Goodspeed v. Fuller*, 71 Am. Dec. 572; *Shepherd v. Rhodes*, 84 Am. Dec. 573; *Reddick v. Jones*, 44 Am. Dec. 68; *Adams v. Wilson*, 45 Am. Dec. 240; *Davis v. Steiner*, 53 Am. Dec. 547. The waiver of a legal right, as for instance here the right to move for a new trial, is a good consideration. *Givan v. Corse*, 20 Mo. App. 132.   It is not even necessary that the promise should be of benefit to the promisee.   *Williams v. Jensen*, 75 Mo. 681.   The quantum of benefit to the promisee is something with which the courts have nothing to do except in cases of fraud or undue influence.   The promisee is at all times the sole judge of its sufficiency. *Hempler v. Schneider*, 17 Mo. 258; *Lindell v. Rokes*, 60 Mo. 249; *Jones v.*

Blank v. Nohl.

*Durgin*, 16 Mo. App. 370; *Neff v. Redmond*, 76 Mo. 195. (3) Where collusion is alleged as a defense it must be proved by him who charges it. It cannot be assumed on mere suspicion for in the eyes of the law connivance and collusion are so disgraceful that the evidence to establish them must be very clear and strong. And when the question of either collusion or connivance is raised to defeat a contract the agreement of the parties will be presumed to be fair and not unlawful or fraudulent, and the burden is on the party attacking it as fraudulent or illegal to prove, by evidence clear and convincing, the fraud or illegality. *Hopkins v. Hopkins*, 39 Wis. 167; *Pollard v. Wyman*, 1 Hagg. Ecc. 725; 3 Ecc. Eng. 308; *Phillipps v. Phillipps*, 1 Rob. 144; *Giddings v. Steele*, 91 Am. Dec. 336. It is not collusion for a husband to allow his wife alimony during the suit (*Barnes v. Barnes*, L. R. 1 P. & D. 505; Stewart on Marriage & Divorce, sec. 303); or for the wife to aid in proofs against herself. *Harris v. Harris*, 4 Swab. & T. 232. Nor is mere friendliness in carrying on a divorce suit, and even mutual assistance in proving the actual facts, collusion. Stewart on Marriage & Divorce, sec. 303; *Hunt v. Hunt*, 47 L. J. Matcas, 22, 23; *Barnes v. Barnes*, L. R. 1 P. & D. 505. And the mere fact of the defendant's confession is no proof of collusion. Stewart on Marriage & Divorce, sec. 306. (4) This agreement does not fall within that class which has been held illegal between the parties to a divorce suit, on the ground of public policy. It was not collusive, and, having been entered into only after the decree had been rendered, when the divorce therefore was *fait accompli*, cannot be truthfully said to have facilitated the divorce. *Schmeiding v. Doellner*, 10 Mo. App. 373; *Schmeiding v. Doellner*, 13 Mo. App. 228; *Merrill v. Merrill*, 38 Mich. 707; *Hunt v. Hunt*, 47

L. J. P. & D. 22; *Blake v. Blake,* 7 Iowa, 50; *Jones v. Jones,* 27 Pac. Rep. 85.

*Kehr & Tittman* for respondent.

(1) On its face the agreement is without consideration. As it recites that the divorce had been granted, it follows that the defendant had thereby been absolved from all obligation to the plaintiff,, and his promise to pay her an annuity is without a consideration to support it. *Boyken v. Rain,* 65 Am. Dec. 356; *Cook v. Bradley,* 18 Am. Dec. 79; Anson on Contracts [2 Am. Ed.] 79; *Greenabaum v. Elliott's Adm'r,* 60 Mo. 25; Bishop on Contracts, sec. 102. (2) A motion for new trial is an application for an order granting a retrial or re-examination of the cause in the same court. It enables the party making it to point out any error of fact or law, or any accident or omission by which justice was defeated in the trial of the cause. Without it no review is possible of any error of law or fact, committed by the trial court. Thompson on Trials, secs. 2710, 2712; *Bank v. Allen,* 68 Mo. 474; *Wetherall v. Harris,* 51 Mo. 65; *Brady v. Connelly,* 52 Mo. 282; *Hulett v. Nugent,* 71 Mo. 131; *State ex rel. v. Smith,* 104 Mo. 419. As the plaintiff stipulates to forego her right to move for a new trial in a pending divorce suit, the instrument upon its face is an agreement to facilitate the divorce, and is, therefore, void. (3) It is competent and proper at all times to go back to the facts out of which an agreement arose, and to determine by them the law and the rights of the parties, no matter what disguise may have been resorted to to hide them. Leake on Contracts, pp. 771-2; Anson on Contracts [2 Am. Ed.] top p. 260, and note; *Folsom v. Mussey,* 23 Am. Dec.

522. (4) The true and real consideration for the agreement was the withdrawal of opposition to the divorce. It is quite immaterial at what stage of the case the agreement to facilitate the divorce was made. Any agreement pending the suit concerning the alimony, made without the knowledge or sanction of the court, or any agreement between the parties to withhold facts or evidence from the court, or to influence its decision by concealment or misrepresentation is void. *Speck v. Dausman*, 7 Mo. App. 165; *Schmeiding v. Doellner*, 10 Mo. App. 373; 2 Bishop on Marriage & Divorce [6 Ed.] secs. 237*a*, 239, 435; *Sayles v. Sayles*, 21 N. H. 312; *Weeks v. Hill*, 38 N. H. 199; *Cross v. Cross*, 58 N. H. 373; *Stoutenberg v. Lybrand*, 13 Ohio St. 228; *Viser v. Bertrand*, 14 Ark. 267; *Sampson v. Cresson*, 6 Phil. 229; *Kilborn v. Field*, 78 Pa. St. 194; *Stilson v. Stilson*, 46 Conn. 15; *Belden v. Munger*, 5 Minn. 211; *Adams v. Adams*, 25 Minn. 72; *Muckenburg v. Holler*, 29 Ind. 139; *Everhart v. Puckett*, 73 Ind. 409; *Stokes v. Anderson*, 118 Ind. 533–52; *Beard v. Beard*, 65 Cal. 354; *Phillips v. Thorp*, 10 Ore. 494; *Comstock v. Adams*, 23 Kan. 513; *Hamilton v. Hamilton*, 89 Ill. 349; *Danforth v. Danforth*, 105 Ill. 603; *Barnes v. Barnes*, L. R. 1 P. & D. 505; *Hope v. Hope*, 8 De G., M. & G. 731; *Goodwin ·v. Goodwin*, 4 Day, 343; *Seelon v. Reed*, 5 Biss. 125.

BLACK, J.—This was a proceeding commenced in the St. Louis probate court by Helena Blank against Francis Nohl as administrator of the estate of Oscar Blank, to obtain the allowance of a demand amounting to over $9,000. The demand is founded upon the following contract, signed by Helena Blank and by Oscar Blank, dated the ninth of March, 1880:

"Helena Blank, Plaintiff,  ⎫     In the Circuit Court of
            v.              ⎬ the City of St. Louis,
"Oscâr Blank, Defendant.  ⎭  Number 52,206.

"The above cause having been heard by the court upon the pleadings and proofs in the cause and a decree of divorce granted to defendant and against plaintiff, defendant, Oscar Blank, mindful of the marital relations which have existed between themselves, in consideration that she doth forego making a motion for a new trial which would be futile in any advantage to her, while productive to him of further annoyance and expense, doth covenant to and with said Helena Blank, that on the first day of every month, beginning with the first day of the month of April now next ensuing, he will pay to her the sum of $75, and a like sum of $75 on the first day of every .month thereafter so long as she, the said Helena, shall live and whether she, the said Helena, remain married or unmarried. And it is agreed between the parties, that, inasmuch as the same is intended to be for her maintenance and support, the amount so to be paid to her shall never be subject to the demands of any of her creditors, nor shall it ever be anticipated by her assignment, and payable to her only upon her individual receipt. Nor can it at any time or under any circumstances be compounded or commuted for a fixed sum, as other annuities are, though by mutual concurrence of said Helena and of said Oscar Blank, his heirs, executors or administrators, for a valuable consideration it may be released."

The agreement goes on to provide that Oscar Blank shall pay the costs of the suit, but no attorneys' fees beyond what he had paid; that he will turn over to Helena Blank one bond of the value of $1,000. And it is then further provided, "that the said Oscar

will deliver to her her letters during 1879, by her written to F. L. Schmidt, and the translations thereof, read at the trial in the above-entitled cause, which letters he about a month ago obtained of said Schmidt; that while he may retain them until, by the expiration of the term, said Helena cannot by a motion for new trial avoid the advantage he thus gained over her, yet that upon the execution of these presents these letters, sixteen in number, and their translations as so read in court, and her photograph as shown in court at the trial in explanation of one of these letters, shall be inclosed in suitable envelopes or coverings, sealed with a seal, to be left in the possession of * * * her attorney, while the papers themselves shall remain in possession of * * * attorney of said Oscar, but as escrows, to insure their delivery on the first day of the next ensuing April term of said circuit court to said Helena, provided she have complied with her part of this contract. The letters and papers so mentioned to be so inclosed and sealed to insure that no publicity of their contents be had.

"In consideration whereof the said Helena covenants to and with said Oscar that she will forego her right to move for a new trial in the above-entitled cause."

Dr. Oscar Blank made the payments specified in the contract from the date thereof down to his death in June, 1887, and the defendant as administrator of his estate continued to pay the plaintiff the $75 per month for about one year thereafter. The probate court rejected the demand, and so did the circuit court, and she sued out this appeal.

The divorce suit of Helena Blank against Oscar Blank, mentioned in the foregoing agreement, was commenced in 1879. She alleged in her petition that the defendant had assaulted her, that he had threatened to

kill her, that he had charged her with infidelity, and that he had been guilty of various other indignities.

The defendant filed answer and cross-bill. In the cross-bill he charged her with repeated acts of adultery with F. L. Schmidt.

The parties prepared for trial on these pleadings, by each causing some ten or eleven witnesses to be subpœnaed for the fourth of March, 1880, the day on which the cause was set down for trial. Instead of going to trial on that day leave was granted to defendant to withdraw his answer and cross-bill from the files and amend the same, and the like leave was granted to the plaintiff to withdraw her reply. On the next day the defendant filed an amended answer and cross-bill, and the plaintiff at the same time filed a reply thereto. This amended cross-bill, instead of charging the plaintiff with adultery, alleged that she had neglected the society of the defendant for that of Schmidt, and had permitted the latter undue familiarities. On the eighth of the same month, the court heard the case and awarded the defendant a decree of divorce. The above contract was executed on the following day, the ninth of March, 1880.

There had been a previous divorce suit between these parties, on the hearing of which the court dismissed the bill and cross-bill.

On the trial of the present case in the circuit court, the defendant administrator called to the witness stand the attorney who represented Oscar Blank in the divorce suit mentioned in the contract. This witness says: "I conferred with the attorney for the plaintiff in the divorce suit, upon the subject incorporated in the agreement, before the hearing of that suit. The defendant had obtained certain letters which were very damaging, and I was satisfied that I could prove they were written by Mrs. Blank. I said to the attorney for

the plaintiff: 'There is no show for her in this case. You might as well let judgment go. Dr. Blank has no unkind feeling towards his wife, and he is willing to settle on her $75 per month.' The attorney for plaintiff rejected the proposition, and the letters were returned to me and we went to trial. The proposition was, if no fight was made, he would settle on her $75 per month after the divorce, but the proposition was rejected. The arrangement about $75 per month had been mooted and bruited for quite a while. When this agreement was entered into the divorce was an accomplished fact. The agreement is a very sincere and truthful expression of the facts as I understood them."

As to the trial of the divorce case, this witness says: "There were two witnesses called, one to prove the signature to the letters, and the other an expert to prove the translations. The letters were in German, and are the letters alluded to in the agreement. I have no recollection as to whether we had any other oral testimony. I don't remember of any other testimony but those letters and the formal proof. My impression is very clear that Mrs. Blank was present at the trial. She may have been away. *Q.* She called no witnesses on the eighth? *A.* I have no recollection of her calling any; there may have been but I have no recollection."

This witness says there was no agreement to suppress any evidence. The letters were passed to the judge to read and act upon.

Back of the question, whether the contract can be valued so as to allow the plaintiff a sum in gross in full discharge of it, is the more important one whether the agreement can be enforced at all, so far as it remains unexecuted. In other words the question is, whether the agreement violates a sound public policy. Marriage is more than a mere civil contract. It is a matter

of state concern; and, when the marital relation is once created, it cannot be dissolved by any agreement of the parties.   It can be dissolved, and dissolved only, in the manner and for the causes allowed by law.   Courts sitting in divorce cases are bound to protect the public interests as well as the rights of the parties themselves; and, hence, it is that before a party is entitled to a divorce it must be made to appear by proof that he or she is the innocent and injured party, and this, too, though there is a default on the part of the other party.

For like reasons the law is well settled that an agreement having for its object and consideration the granting of a divorce is illegal and void.   Says Bishop: "But the law does not favor divorce, and permits it only for approved causes, and on sentence from duly established public authority.   Therefore, any agreement for divorce, or any collateral bargaining promotive of it, is unlawful and void."   2 Bishop on Marriage & Divorce [Ed. 1891] sec. 696.   The defendant in a divorce suit is not bound to make a defense, and mutual assistance in proving the actual facts does not amount to collusion.   Stewart on Marriage & Divorce, secs. 302–3.   But a bargain that there shall be no defense is collusion, and any promise founded on such an undertaking cannot be enforced.   2 Bishop on Marriage & Divorce [6 Ed.] sec. 239.

The case of *Barnes v. Barnes*, L. R. 1 P. & D. 505, furnishes an illustration of what are and what are not collusive contracts.   It is there said in substance that the mere fact that the husband gave the wife money for her support, both before and after he instituted the divorce suit, did not prove collusion; but furnishing the support in consideration that the wife would keep quiet, so that he could get a decree cheaper than he otherwise would get it, was collusion.   Says Bishop: "It makes no difference how just the cause may be, if

the parties collude in the management of the case before the court, this is collusion. It is also collusion where material facts are suppressed, though they would not have changed the result." 2 Bishop on Marriage & Divorce [6 Ed.] sec. 28.

The authorities are numerous to the effect that any agreement that the defendant in a divorce suit will not make a defense, or having for its object the dissolution of a marriage contract, or designed to promote and facilitate a divorce is void, because opposed to the policy of the law; and any promise founded on such an agreement is also void, and should not be enforced. *Sayles v. Sayles,* 21 N. H. 319; *Cross v. Cross,* 58 N. H. 373; *Viser v. Bertrand,* 14 Ark. 267; *Stoutenburg v. Lybrand,* 13 Ohio St. 228; *Kilborn v. Field,* 78 Pa. St. 194; *Adams v. Adams,* 25 Minn. 72; *Muckenburg v. Holler,* 29 Ind. 139; *Phillips v. Thorp,* 10 Ore. 494.

The defendant in the divorce suit made a proposition to plaintiff to the effect that if she would let judgment go in his favor he would settle upon her $75 per month. Thereupon the pleadings were amended, and the witnesses discharged, and in four days thereafter the case was submitted on the letters, and defendant obtained a divorce decree. On the next day the contract now in question was executed. On this evidence the conclusion would be irresistible that this written contract simply voiced a previous arrangement. On such a state of facts there can be no doubt but the contract should be held to be illegal and void.

But the administrator produced evidence to the effect that the proposition made by the defendant was rejected, and that there was no agreement or understanding between the parties at or prior to the date of the decree. On this state of facts it is earnestly insisted that the agreement sued upon was not one made to promote or facilitate a divorce, and this for the reason

that it was entered into after the divorce had been granted—after the divorce was an accomplished fact.

The error in this argument lies in the fact that the divorce was not then an accomplished fact. The law gave the plaintiff the right to file a motion to set aside the decree and for a new trial at any time within four days. Such a motion is a regular step in the proceeding. By it she could have pointed out any suppression of evidence or imposition upon the court as well as errors of law and fact. By this agreement she undertakes to make no motion for new trial. It is in its entire scope and effect an undertaking to abandon all opposition to the decree which was then still open to review by the trial court. The agreement is also careful too to carry the case over the term, when the court would have no power to set the judgment aside of its own motion. Such an agreement is just as vicious as one to make no defense at all. There is in principle no difference between an agreement to make no defense and one to abandon all opposition while a motion to set aside the decree and for new trial can yet be made, heard and sustained. We have found no case which will uphold such a contract as the one under consideration. It is, on its face, a collusive contract and a fraud on the law.

The plaintiff in her verified petition charged the defendant with acts which, if true, entitled her to a decree with alimony, unless she was also in fault. The defendant in his verified cross-bill charged her with acts which, if true, entitled him to a decree unless he was in fault. The plaintiff produced no evidence in support of the charges made by her. This is sufficiently shown by the evidence in the present case and the undisputed circumstances. The cause was submitted on the letters written by plaintiff, and a decree entered for defendant. The case presented by the pleadings was one calling for

close consideration by the court at the hearing and on a motion to set aside the decree and for a new trial. Yet this agreement seeks to and does cut off all further inquiry and investigation.   It was and is an imposition on the court—a direct effort to defeat the policy of the law.   Such agreements cannot be sustained, unless we disregard and set at defiance well-settled rules of law.

A defense like this comes with seeming bad grace from the estate of one who has reaped the benefit of the illegal contract, but the objection interposed to the enforcement of the contract is sustained not out of any consideration for Dr. Blank or his estate, but because the law will not lend its aid to the enforcement of an illegal contract.   The law leaves the parties where they have placed themselves.

The judgment is affirmed.   SHERWOOD, C. J., not sitting, the other judges concur, except BARCLAY, J., who dissents.