## CORA ·McDONALD, Respondent, v. R. F. McDON-ALD, Appellant.

### Springfield Court of Appeals, December 11, 1913.

1. **DIVORCE: Action to Annul Decree: Fraud in Procurement of Divorce.** Sec. 2381, R. S. 1909, does not prohibit an action being brought to have a decree in divorce annulled by reason of alleged fraud in its procurement.

2. **————: Fraudulently Obtaining Decree: Properly Set Aside.** In a proceeding for divorce, the husband procured from the wife her written waiver of service of summons and her written consent that the cause might be submitted for trial, relying on his representation and promise that no final action in the matter would be taken until after she was notified. A decree was obtained without giving her notice, as promised. *Held*, that the decree was fraudulently obtained and was properly set aside.

3. **————: Collusion and Agreement: Setting Aside Decree.** A divorce decree procured by collusion or agreement between the parties is properly set aside.

4. **————: Collusion: Setting Decree Aside: Unavailing Defense.** The husband with the consent of the wife, fraudulently obtained, procured divorce. The wife, upon learning of the divorce, signed deeds to real estate, in which she acknowledged and declared herself to be single. *Held*, that this did not prevent the setting aside of the decree upon the application of the wife, where fraud and collusion appear in the procuring of the divorce.

Appeal from Jasper County Circuit Court, Division Number One.—*Hon. J. D. Perkins,* Judge.

AFFIRMED.

*T. D. Steele* and *Hugh Dabbs* for appellant.

(1) The judgment and decree in this case are erroneous and under the law and the facts cannot stand. The facts which constitute the fraud must be stated. Bliss, sec. 211. (2) The facts stated in the petition

must show that the party was not guilty of negligence or that the judgment was not brought about by any fault or negligence upon the part of the plaintiff, which this petition fails to show. Cantwell v. Johnson, 236 Mo. 600; 2 Freeman on Judgments, sec. 486. (3) The burden in this case was on the plaintiff to prove the allegations of fraud set forth in the petition beyond a reasonable doubt. And further that the fraud thus perpetrated was exercised in the very procurement of the judgment complained of, and was a fraud upon the court as well as the other party to the suit. Lieber v. Lieber, 239 Mo. 31. (4) A court of equity will not enjoin the judgment merely because it is founded on a cause of action vitiated by fraud, unless the interposition of the fraud as a defense has been prevented by fraud of the opposite party. 16 Am. Ency. Law (2 Ed.), p. 380; Murphy v. De France, 101 Mo. 157; Freeman on Judgments (3 Ed.), secs. 486, 489. (5) Mrs. McDonald, the defendant in the divorce suit, voluntarily over her own signature entered her appearance and it was immaterial who filed the same in court for her. The Barry Circuit Court became fully possessed of jurisdiction over the parties and the subject-matter of the action. Harding v. City of Carthage, 105 Mo. App. 16; Davidson v. Hough, 165 Mo. 573, 17 Am. Ency. Law (2 Ed.), 1058. (6) The fraud for which a judgment may be vacated must be in its procurement, in its concoction, in the very act itself. Cantwell v. Johnson, 236 Mo. 601, and cases cited. (7) Judgments are impeachable only for fraud extrinsic to the merits of the case. They are not impeachable for fraud relating to the merits between the parties. 2 Freeman on Judg. (4 Ed.), secs. 486-89; Howard v. Scott, 225 Mo. 713; Cantwell v. Johnson, 236 Mo. 601. (8) The court virtually ruled that Mrs. McDonald could not be impeached even though we had at hand testimony to do so. This was clearly error. State

v. Long, 201 Mo. 675; State v. Wifger, 196 Mo. 90; Mueller v. Hospital Assn., 5 Mo. App. 401, 73 Mo. 242; State v. Hack, 118 Mo. 99 and 159. (9) Where it is shown that defendant in a case was guilty of negligence and that had it not been for such negligence no judgment would have been rendered a court of equity will not interfere. Curtis v. Bell, 131 Mo. App. 253; Jones v. Rush, 156 Mo. 374.

*T. O. Nelson* and *Sizer & Kemp* for respondent.

(1) The petition does state the fraud whereby the respondent and the court were tricked, and the circuit court of Barry county was made an instrument of injustice. Shelton v. Horrel, 233 Mo. 306; Graham v. Graham, 102 Pac. (Wash.) 891; Dorrance v. Dorrance, 242 Mo. 625. (2) The respondent was not guilty of negligence nor was the judgment brought about by her fault. Lee v. Harmon, 84 Mo. App. 157; Hamilton v. McLean, 169 Mo. 51; Wonderly v. Lafayette Co., 150 Mo. 635; Mayberry v. McClung, 51 Mo. 256; Ramsey v. Hicks, 53 Mo. App. 190; Link v. Link, 48 Mo. App. 345; United States v. Throckmorton, 98 U. S. 61; Freeman on Judgments, secs. 1572-1575; Mangold v. Bacon, 131 Mo. 496. (3) Where the wife is induced, by false representations, to sign a general denial and waiver, judgment and decree will be set aside on proper showing. Graham v. Graham, supra; Dorrance v. Dorrance, 242 Mo. 625; Earle v. Earle, 91 Ind. 27. (4) Where the husband leads the wife to believe that he will not prosecute his divorce suit and she relies thereon and even fails to defend it, it was held fraud upon the defendant and the court. Womack v. Womack, 83 S. W. 937. (5) When the defendant is free from actual negligence and has been deceived by fraud practiced by his opponent for the purpose of misleading the court, both the court and defendant have acted as neither would but for such fraud and a

judgment so extorted should be set aside in equity provided the defendant has acted with due diligence to discover the fraud, and upon its discovery is without legal remedy in the action in which the judgment was obtained. Fitzpatrick v. Stephens, 114 Mo. App. 501; Dorrance v. Dorrance, supra; Earle v. Earle, 91 Ind. 27; Graham v. Graham, supra. (6) It is not permissible for defendant to attack the reputation or character of plaintiff by undertaking to show specific acts of immorality, and the court rightfully excludes the offered testimony. Rose v. Tholborn, 153 Mo. App. 408; Shafer v. Railroad, 98 Mo. App. 445-454; State v. Gessell, 124 Mo. 531; Wright v. Kansas City, 187 Mo. 692-693; Yeager v. Bruce, 116 Mo. App. 493. (7) Fraud will vitiate any, even the most solemn transactions; neither judgments at law nor decrees in equity are exempt from the operation of this rule. Dorrance v. Dorrance, 242 Mo. 650.

ROBERTSON, P. J.—Defendant obtained a divorce from his wife, the plaintiff above named, in the circuit court of Barry county on July 15, 1912. This action was instituted in the circuit court of said county to have the decree in divorce annulled by reason of alleged fraud in its procurement. A change of venue was taken to Jasper county, where after a trial to the court the relief sought by the plaintiff was granted. The defendant has appealed. Neither of the parties to this action has remarried; therefore, no innocent third parties will be affected by the decision in this case.

That section 2381, Revised Statutes 1909, does not prohibit this action has been settled in the case of Dorrance v. Dorrance, 242 Mo. 625, 148 S. W. 94, where it was held that plaintiff's false affidavit, that the defendant had absconded from her usual place of abode so that the ordinary process of law could not be served

on her in this State, was sufficient ground for the setting aside of a decree of divorce in a suit of this kind.

The husband testified at the trial that he was forty-four years of age and the wife that she was forty-one years of age and they had been married over twenty years. Their domestic troubles originated apparently a long time before the attempted divorce proceedings. It appears that prior to the time the divorce suit was instituted considerable difficulty had arisen and charges and countercharges of infidelity were passed between them.

The husband claimed to be a resident of Monett in Barry county and the wife at that time was living with their daughter, who was about twenty years of age, in Oklahoma. Shortly before July 10, 1912, the defendant in this case notified his daughter by post card that he would visit her and her mother on that date. He accordingly arrived there about nine o'clock in the morning of that day and greeted his daughter, and his wife with the affection usually displayed in a family where the domestic tranquility is normal. He was taken by the daughter and her fiance in his automobile for a ride about town, made some purchases for the household and returned to the home of his wife and daughter where the four had dinner and a generally sociable and enjoyable time, the defendant showing unusual affection towards his wife. In the afternoon the daughter and her fiance absented themselves for some time and then about four o'clock that afternoon the defendant presented to his wife the proposed petition for divorce, containing brief, mild and general charges of such indignities as it was alleged rendered his condition intolerable. She says that he talked to her at some length about their inability to live together; that he stated he had not concluded just what he would do about a divorce, that perhaps he would not bring suit at all and that if he did so he

would notify her.  At the same time he presented to her the following paper:

"Comes now the defendant in the above entitled cause and hereby expressly waives the issue of summons in said cause and the service of the same by an officer, and agrees that the same may be submitted and tried at this term of court; and for answer to plaintiff's petition herein defendant admits the marriage as set forth in said petition, but denies each and every other allegation in said petition contained."

The wife made some objections to the allegations contained in the petition but finally, after it was understood between them that some minor changes should be made in the allegations of the petition, the wife signed the answer above quoted, receiving the assurance from him, she testifies, that he would send her a copy of it; that the circuit court in Barry county would be in session the latter part of that month and that he would notify her when court was in session. The wife states that she did not agree that she would not appear to defend the suit.  She testifies that she intended to appear in court when the case was taken up, if the husband filed the papers; and, while admitting that she used some of the epithets charged against her in the petition, she says she told her husband that she wanted to explain to the court the provocations and the circumstances under which they were uttered. The testimony abundantly shows that the husband intentionally left the impression upon the mind of his wife that the case would not be taken up and that no final decree would be entered in the divorce case until after she was notified and given an opportunity to be present and have a hearing.  After the answer was signed the husband continued his kind treatment of his wife.  He left that night at about 12:30.  On the morning of the 11th the wife wrote to her husband asking him if he thought it unreasonable for her to

McDonald v. McDonald.

ask him to return, marked paid, a note of hers which he had and concluded the letter as follows: "If you do, don't proceed with papers."

Upon returning to Monett, the husband employed an attorney to appear in court as the attorney for his wife, which, he testifies, he thought was necessary to give the court jurisdiction, paying him a fee therefor. On July 15, 1912, the husband, with his regular attorney and two character witnesses, and the attorney employed to appear as attorney for the wife, proceeded to the place of holding circuit court in Barry county and filed the petition and the answer. The attorney employed to appear as the attorney for the wife signed the answer as such attorney at the request of the judge. The husband testified and introduced the two witnesses as character witnesses and the decree complained of was entered. Whereupon he mailed to his daughter a newspaper containing a report of the court proceedings of that day, in which was included as account of the granting of the decree of divorce. The wife immediately took steps toward obtaining relief from this decree, although this suit was not instituted until in November following, but she undertakes to explain the reason for and to excuse the delay.

There being abundant testimony in our opinion to sustain the contention of the wife that she was led to and did believe that the divorce papers presented to her in Oklahoma would not be filed, if at all, and action taken thereon, without giving her an opportunity to be heard, it is clear to us, so far as this case may be considered solely as a contest between the husband and wife, that the decree cannot stand. If it were an ordinary civil suit, the fact that the husband led his wife to believe that no action would be taken by him until after she was notified justified her in relying thereon, and the betrayal of this confidence would

render the judgment nugatory as to her. [Sherer v. Akers, 74 Mo. App. 217, 225.]

There is, however, another question involved in this case that is of greater importance than the one we have just been discussing and one of which the litigating parties do not have exclusive control. By section 2371, Revised Statutes 1909, the plaintiff in a divorce suit is required to accompany his petition with an affidavit that the complaint is not made by collusion between the plaintiff and the defendant for the mere purpose of being separated from each other. "Marriage is more than a mere civil contract. It is a matter of State concern; and, when the marital relation is once created it cannot be dissolved by any agreement of the parties. . . . The law is well settled that an agreement having for its object and consideration the granting of a divorce is illegal and void. . . . . The law does not favor divorces. . . . 'Therefore, any agreement for divorce, or any collateral bargaining, promotive of it, is unlawful and void.' " Any bargaining between the husband and wife so that he can get a decree cheaper than he otherwise would get it is collusion. " 'It makes no difference how just a cause may be if the parties collude in the management of the case before the court, this is collusion.' " [Blank v. Nohl, 112 Mo. 159, 167, et seq., 20 S. W. 477.] In the same opinion it is said: "The authorities are numerous to the effect that any agreement that the defendant in a divorce suit will not make a defense, or having for its object the dissolution of a marriage contract, or designed to promote and facilitate divorce, is void, because opposed to the policy of the law. . . ."

It is apparent from the testimony of both parties in this case that material facts claimed by each of them to exist were suppressed and that but for the suppression by the husband, according to his own testimony, of the charges he otherwise would have made against

his wife, he would have been unable to procure her signature to the answer and would have been unable to proceed with his divorce suit without a contest.

"Courts are justified in calling for a full and complete disclosure of all of the facts on both sides before dissolving the relation. And when the parties then institute a pretended suit, under a collusive agreement between themselves to cheat the court by falsifying and concealing the facts, and this collusion is shown to exist at any stage of the proceeding it is deemed a conspiracy against justice and will 'stop the judicial wheels for the obvious reason that courts sit to advance justice and antagonize fraud.' " [Gentry v. Gentry, 67 Mo. App. 550, 553.] It is thus apparent that, ignoring the first proposition above discussed and accepting the testimony of the defendant in this case as true, it would be against public policy to allow the decree of divorce, under the circumstances existing in this case, to stand.

The defendant in this case places considerable stress upon the conduct of his wife in writing the letter from which we quoted, but we are unable to see that this can militate against her upon the first point discussed for the reason that there was nothing in that letter that would indicate that she in any manner intended to waive, or considered that she was waiving, the right she supposed she had under her agreement with him to be notified before the petition for divorce was taken up and the decree entered. The only question to which that letter could be addressed would be, that she was not imposed upon and that after she had had an opportunity to reflect and pass from under the influence of his kind treatment of her while he was there, she yet recognized that she had voluntarily signed the answer; but that question is not material to our determination of the case.

Conceding that this letter does show a mercenary spirit on the part of the wife and a willingness to sell the privilege of a divorce to her husband, that would have much weight in an ordinary suit where the parties had a right to agree as to the price and terms of a particular judgment. It counts for nothing, however, in a divorce proceeding, where all such bargaining is illegal and void. As between the public, which is a party to every divorce proceeding and is represented by the court, and the parties of record, the fact that the complaining party here was willing to or did collude in allowing the divorce to be granted furnishes no reason why the court, representing the State, should not set aside the decree because of fraud and collusion in a suit of the character of the one now under consideration.

It was also disclosed by the testimony that the wife, after she had received notice of the granting of the decree of divorce, signed deeds to real estate and acknowledged and declared herself therein as single and unmarried. This cannot affect our decision upon the second proposition discussed because by no conduct of hers can she give validity to the unlawful conduct of the husband in procuring the divorce.

Nothing that we have said herein is intended to lend any encouragement to either of the parties hereto as to the merits of their claims against each other, because with that we have nothing whatever to do; that is a matter that cannot be inquired into in this action, except to define the conditions under which the agreement, the defendant here claims to have had with his wife, was obtained and undertaken to be consummated.

The judgment of the circuit court is affirmed. *Sturgis, J.,* concurs; *Farrington, J.,* not sitting.