WILLIAM S. SHIRK, Respondent, v. IDA C. SHIRK, Appellant.

### Kansas City Court of Appeals, May 16, 1898.

1. **Divorce:** COLLUSION: COLLUSION BETWEEN COMMENCEMENT OF SUIT AND TRIAL. An executory collusive agreement entered into after the institution of a divorce suit but repudiated before the trial should be treated at the trial as if it never existed.

2. ———: ALIMONY PENDENTE LITE: EVIDENCE. On the evidence in this case the provision by the plaintiff for alimony for the defendant is *held* ample.

3. ———: CONTINUANCE: JUDICIAL DISCRETION: APPELLATE PRACTICE. An application for a continuance is addressed to the sound discretion of the trial court and every intendment is in favor of its action. And in this case the action of the court does not warrant appellate interference.

4. ———: DOMICILE: JURISDICTION. Physical residence in a particular place will not of itself constitute domicile without the mental determination of making the place a home and a married man with two places of residence will be domiciled at the place of his own selection, and in this case the plaintiff's domicile was Sedalia and the Pettis court had jurisdiction.

5. ———: EX PARTE PROCEEDING: EVIDENCE: CHARACTER. This proceeding is not *ex parte* so as to require evidence of plaintiff's good character.

*Appeal from the Pettis Circuit Court.*—HON. GEO. F. LONGAN, Judge.

AFFIRMED.

COOK & MOONEYHAN and HENRY R. HALL for appellant.

(1)  The court should have sustained defendant's motion to dismiss, on account of the collusive contract previously entered into between plaintiff and defendant.  Gentry v. Gentry, 67 Mo. App. 550; Blank v. Nohl, Adm'r, 112 Mo. 159; Salorgen v. Salorgen, 6 Mo. App. 602; 2 Bishop on Marriage and Divorce [6 Ed.], secs. 28a, 29; *Ibid.*, sec. 239; Barnes v. Barnes, Law Rep. 1 P. & M. 505; Stewart on Marriage and Divorce, 305; Hopkins v. Hopkins, 39 Wis. 167–169.  (2)  Defendant's motion for a continuance should have been sustained, and a continuance granted. R. S. 1889, secs. 2126 and 2127.  (3)  The trial court should have dismissed plaintiff's bill for want of jurisdiction..  R. S. 1889, sec. 4501; 2 Bishop on Marriage and Divorce, secs. 141, 118, 119, 120b.  (4)  The court erred in permitting plaintiff to testify as to conversations had, and alleged acts done by defendant, when only the husband and wife were present.  Moore v. Moore, 51 Mo. 118; Buck v. Ashbrook, 51 Mo. 539; Vogel v. Vogel, 13 Mo. App. 588; Miller v. Miller, 14

Mo. App. 418 (see pages 427 and 428 of the court's opinion). (5) The proceedings being *ex parte*, it was incumbent upon the plaintiff to prove his character and conduct towards defendant by the testimony of witnesses who knew the plaintiff and defendant in their domestic life. Reed v. Reed, 39 Mo. App. 473; McMakin v. McMakin, 68 Mo. App. 57. (6) The court should have allowed defendant alimony *pendente lite*, and failing in which, the appellate court has jurisdiction to grant such allowance. Dawson v. Dawson, 37 Mo. App. 207, and cases therein cited; State ex rel. v. Seddon, 93 Mo. 522; Waters v. Waters, 49 Mo. 387; Rosenfeld v. Rosenfeld, 63 Mo. App. 411; Clarkson v. Clarkson, 20 Mo. App. 94; Miller v. Miller, 12 Mo. App. 593; State ex rel. v. St. Louis Court of Appeals, 99 Mo. 216; Dwyer v. Dwyer, 16 Mo. App. 422.

MONTGOMERY & MONTGOMERY and SANGREE & LAMM for respondent.

(1) If the court should, notwithstanding the fact that no exception was legally saved to the action of the court in overruling the motion for a continuance, see proper to consider it, it will be found to have been properly overruled. (2) And if the court, notwithstanding its rules and repeated adjudications, will as a matter of extreme and plenary grace to appellant, ignore the abstract and look into the transcript, it will find that the decree was warranted by the uncontradicted testimony and should be affirmed. (3) The authorities cited by appellant are not in point to sustain any pretended error properly shown by appellant's abstract, nor are they in point to sustain any pretended error which might be gleaned from the transcript if the court, as said, will look beyond the abstract itself.

SMITH, P. J.—This is an action for divorce. The petition, which was filed in the office of the clerk of the circuit court of Pettis county on the ninth day of August, 1897, alleged that the defendant, *first*, had "been repeatedly guilty of such cruel and barbarous treatment as to endanger the life of plaintiff," and, *second*, had "offered such indignities to plaintiff as rendered his condition intolerable." Under these substantive allegations there were appropriately pleaded a great number of specifications.

STATEMENT.

On the twenty-fifth of August, 1897, the defendant commenced an action for divorce against the plaintiff in the circuit court of the city of St. Louis. The ground thereof was identical with the second clause alleged in plaintiff's petition in his like action, differing only in specification. Summons was served on defendant in the former of these suits on September 8, 1897, and in the latter on the plaintiff, three days thereafter, or on the eleventh of September, 1897. On September 17, 1897, the plaintiff and defendant entered into a written agreement, by the terms of which the latter was thereafter to dismiss her action and not to file an answer in the suit of the former against her. The agreement contained other stipulations, among which was one to the effect that plaintiff would, on the granting of the decree of divorce, convey to defendant his Vernon street home and discharge the twenty-one notes for part of the purchase price of the same, etc.; and another that the plaintiff would pay the defendant $500 in cash, and keep up a certain policy of insurance on the life of the plaintiff; and still another that defendant would surrender a certain promissory note given by the latter to the former, etc.

The answer of defendant, which was filed November 18, 1897, contained a general denial of the allegations of the plaintiff's petition, supplemented with

specifications of various breaches of the marital duties on the part of plaintiff. On December 6, following, the plaintiff filed a replication to the defendant's answer which, in addition to the denial therein contained, were these allegations:

"The defendant further replying, and for the purpose of bringing to the attention of the court matters which the court should know, and which transpired since the bringing of this suit, avers that on the institution of this suit in the county of plaintiff's residence, to wit, Pettis county, caused his attorneys to at once notify defendant of that fact, and to unfairly take advantage of such notice, she concealed herself so that process could not be served upon her for a long time. In the meantime, she herself instituted a suit for divorce against the plaintiff in the city of St. Louis; that finally summons was served upon defendant in this cause, and afterward summons was served upon plaintiff in the cause instituted by defendant in the city of St. Louis; that while both said causes were so pending, this plaintiff undertook to enter into a contract, as he supposed, with defendant, in regard to her support and alimony *pendente lite*, and such contract was drawn by defendant's attorneys. Plaintiff avers that at the time he and his children were humiliated over the sensational publication brought about by defendant, in the newspapers of the city of St. Louis, and, on reading the draft of the contract drawn by the defendant's attorneys, he did not note certain provisions therein, which he is satisfied were not intended to be collusive, but which he now admits, on second reading, are susceptible of such construction. Plaintiff did notice certain other provisions therein which, to him in his distressed condition, seemed collusive, and he objected to them at the time, but was assured by

Vol. 75 app—37

defendant's attorney that they were not intended to have such meaning or effect, and, in the absence of his own counsel, he signed such contract.

"Such contract is now here attached to this reply as 'Exhibit A,' and submitted to the court for inspection. Plaintiff states that the contract is executory. There was paid and caused to be paid to defendant, and for her benefit, one thousand ($1,000) dollars for her support as alimony *pendente lite*, since the institution of this suit, and that defendant has long since entirely repudiated the contract, and this plaintiff, advised thereto by his counsel when they first read the contract, repudiated the same, and now, here in open court, again repudiates such contract, because it is susceptible of collusive construction.

"Plaintiff brings the matter fully before the court and prays to be purged of such apparent collusion, and prays a full hearing on his grounds for a divorce, and renews his prayer for a decree of divorce, as in his petition set forth."

The cause was duly reached on the docket and called for trial on the sixth day of the December term of the court, when the defendant filed a motion to dismiss the action for the reason that the said agreement of September 17, 1897, entered into between plaintiff and defendant and referred to in plaintiff's replication was collusive and for the purpose of securing a divorce. The plaintiff contended that the issue of collusion was raised by the pleadings and would properly come up for hearing on the merits, but this the court denied and a hearing on the motion was heard at great length, after which it was by the court overruled.

The authorities are quite agreed that any contract between the parties having for its object the dissolution of the marriage contract, or facilitating that result,

Shirk v. Shirk.

such as an agreement by the defendant in a pending action for divorce to withdraw his or her opposition and make no defense is void as *contra bonos mores*. Phillips v. Thorp, 10 Ore. 494, and authorities there referred to. It is not pretended that there was any collusion between the parties at the commencement of the suit. The agreement which it is insisted was collusive was entered into after the plaintiff's suit was commenced. The only evidence adduced which tends to establish the existence of collusion at the trial is to be found in that agreement. While it was executory and before the trial the plaintiff fully repudiated it and by his replication disclosed. all the facts to the court. The court was thus put upon its guard and the intended fraud was frustrated. That the collusive agreement was repudiated by both parties long before the trial must be conceded. About a month before the trial the defendant's attorneys demanded of plaintiff the payment of $3,000 in addition to what defendant had already received under the agreement as a condition upon which defendant would file no answer in the plaintiff's action against her. This proposition plaintiff declined and thereafter both parties repudiated the agreement.

The spirit of hostility evinced by the parties both in their pleadings and at the trial conclusively shows that though the element of collusion may have crept into the case after the suit was brought that it had no existence there when the trial took place. And as it was not present in the case either at the commencement of the suit or at the trial, the case stood and was properly disposed of as if it had never therein existed at all. Rosenfeldt v. Rosenfeldt, 67 Mo. App. 29; Lonevan v. Lonevan, 106 Cal. 509.

*[margin note: DIVORCE: collusion: collusion between commencement of suit and trial.]*

In defendant's motion there was coupled with the ground of dismissal of the plaintiff's action a prayer for alimony *pendente lite*. This latter matter was heard and determined adversely to the defendant. It appears from the evidence that the plaintiff's main purpose in entering into the agreement was to satisfactorily arrange the defendant's alimony. When the agreement, which was drawn by defendant's attorney, was presented to the plaintiff he called the former's attention to certain features of it and suggested that it might possibly.be construed to be of a collusive character and on being assured by such former that he did not think it subject to that construction, he signed it. It is made quite apparent from both the testimony of the plaintiff and that of the defendant's attorney who drew the agreement that the plaintiff was not conscious of the collusive character of the instrument at the time he signed it nor until some time afterward when his attorneys, to whom it was submitted for the first time, so advised him. The plaintiff before receiving this advice of his attorneys had paid to defendant, or had bound himself to pay for her, over $1,000 in money, and besides this had turned over to her personal property of the value of $650. It further appears that from the date of the separation until that of the trial the plaintiff had provided defendant with a house in which to live. It further appears that at the time of the trial the plaintiff was fifty-four years of age, and then had two minor children dependent upon him for support; that he was a lawyer and derived from the practice of his profession an annual income of about $4,500; that his liabilities were much in excess of his assets; that when the aggregate amount of his interest, taxes and the necessary living expenses of himself and children are deducted from that of his income there

*——: alimony pendente lite: evidence.*

was no remainder. The provision made by plaintiff for defendant in respect to alimony it seems to us was, under the circumstances, alike liberal to her and creditable to himself. The defendant certainly received a very just and equitable share of the plaintiff's property. We can not therefore find any fault with the action of the court in denying the defendant's motion *in toto*.

It appears that when the court consented to hear the defendant's motion to dismiss and for alimony it was understood all around that if the same should be denied that it would proceed with the hearing on the merits. When this motion had been heard and determined adversely to the defendant she then filed an application for a continuance, which was by the court heard and refused. An application for a continuance is addressed to the sound discretion of the court. Every intendment is in favor of the correctness of the action of the trial court refusing such application. It is entitled to no intendments in its favor. Blair v. R'y, 89 Mo. 383; State v. Riney, 137 Mo. 102; Leabo v. Goode, 67 Mo. 126. No suggestion has been made by defendant that would authorize an interference by us with the discretion so exercised by the trial court. The court on overruling this dilatory motion proceeded to hear the evidence on the merits; and against this the defendant's counsel entered a most vehement protest. The defendant, however, cross-examined the first two witnesses offered by the plaintiff and then declined to further appear in the case. She was represented by two law firms, both of whom declared to the court that their engagements elsewhere made it impossible for them to further appear during the trial.

The evidence adduced tended to prove that the plaintiff and defendant were married in September, 1896, and continued to live together until the following

August; that the defendant was averse to taking up her residence with the plaintiff in the city FACTS. of Sedalia in this state where the latter had continuously resided for more than seventeen years; that she desired to live in St. Louis, to the end that her minor son, by a former marriage, might have better opportunities of acquiring a commercial education; that thereupon the plaintiff, in order to keep peace in his family, and gratify the wishes of defendant, procured a house in the latter city and furnished the same, assuring the defendant that he could not abandon his home in the former city, and that he would, while she occupied their St. Louis home, endeavor to be with her as much as was possible; that the plaintiff continued to keep up his domestic establishment in Sedalia, where his family had resided since the death of his former wife in 1886; that he endeavored to induce the defendant to reside with him in his Sedalia home but that she persistently refused to do so; that the plaintiff, during the short period of their joint married life, made ample provisions for the support of the defendant and her son; that he faithfully demeaned himself toward the defendant but that her demeanor instead of being reciprocal was to the contrary; that she on various occasions had cruelly and wantonly assaulted and beaten plaintiff; that she had appeared in an apparently crazed and demented condition at his law office and on the public streets of the city of St. Louis and in the presence and hearing of others had used toward him vile and unseemly language and had thereby subjected him to a humiliation and mortification "too grievous to be borne." In fact the evidence was quite sufficient to support all the charges alleged in the petition.

Though the plaintiff kept up two domestic establishments at the same time we do not think that he lost his Sedalia residence thereby. It is true that the agreement entered into with defendant after this suit was brought refers to "their home" in St. Louis. The fact that he bought a house in St. Louis, taking the title in the name of himself and wife, as husband and wife, and living in it with his wife while in St. Louis, under the circumstances shown by the evidence, did not change his domicile. Walker v. Walker, 1 Mo. App. 404, on 413, *et seq.* "Physical stay or residence in any particular place will not of itself constitute a *domicile.* The physical act of staying must be accompanied with the *mental determination* of making a home or domicile in the place where the party stays or abides." State v. Dayton, 77 Mo. 678, 682; Johnson v. Smith, 43 Mo. 499. "If a married man has two places of residence at different times of the year, that will be deemed his domicile which *he himself selects* or describes or deems to be his home, or which appears to be the center of his affairs, or where he votes or exercises the rights and duties of a citizen." Stewart on Marriages and Div., secs. 222 and 223; 2 Bishop on Mar. and Div., secs. 109 and 111.

*— : domicile: jurisdiction.*

The plaintiff shortly after his marriage was asked by one and another of his acquaintances whether he was going to reside in St. Louis, to all of which inquiries he seems to have invariably responded in the negative. There is not a single circumstance except the admission of the agreement already adverted to, which in any manner tends to show that he intended to abandon his Sedalia residence. That was his domicile, "the center of his affairs;" there, in his own house and home, he kept his minor children; there he voted; from thence he registered at hotels; there was

his law office and his law practice; there he exercised his rights of citizenship and never anywhere else; there his personal property was taxed and the taxes paid.

The conclusion is irresistible that the plaintiff did not untruthfully allege in his petition that he was then and had been continuously for the past seventeen years a resident of the county of Pettis in this state.

In view of the record we think there is no ground whatever upon which the jurisdiction of the court can be disputed. Manifestly this is not an *ex parte* proceeding within the meaning of the statute, section 4508, Revised Statutes. It is not, therefore, analagous to that of Reed v. Reed, 39 Mo. App. 473.

——: ex parte pro-
ceeding:
evidence:
character.

An examination of the testimony of the plaintiff does not disclose that the court permitted him to testify to conversations which took place between himself and the defendant during their married life when no one else was present. Because of the numerous complaints that have been lodged with us by the defendant we have been influenced to subject the entire record to the very closest scrutiny, but notwithstanding this we have been unable to discover anything there that would justify an interference by us with the decree. Which must be affirmed. All concur.