PATRICK H. DONOHUE, Respondent, v. ROSA DONOHUE, Appellant.

Kansas City Court of Appeals, December 20, 1911.

1. **DIVORCE: Plaintiff Must be. Free from Fault.** Plaintiff sued his wife for divorce. The evidence was more than sufficient to prove the wife's misconduct. It appeared, however, that the plaintiff was aware of his wife's moral shortcomings at the time he married her. It also appeared that plaintiff in an effort to find evidence of misconduct on defendant's part after the marriage, was more satisfied than shocked at the success of his effort. It also appeared that while defendant was ill plaintiff failed to bestow upon her the care and protection which the law demands that a husband must give his wife however erring she may be. It was held that plaintiff was not entitled to a divorce.

2. ————: **Immateriality of Motive Causing Marriage.** Prior to the time plaintiff and defendant were married they had lived together. Just before they were married they executed a written contract that the wife should get a divorce from plaintiff. The contract provided that plaintiff was to pay defendant $1500 in monthly instalments of $50 each. This contract was a nullity and its execution did not affect the validity of the marriage or change in any respect the marital obligations imposed by law upon the parties to the contract of marriage.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover*, Judge.

REVERSED.

*N. F. Heitman* for appellant.

*Lowe & Shannon* for respondent.

BROADDUS, P. J.—This is a suit for divorce. On the 10th day of December, 1906, the parties were lawfully married in Kansas City, Kansas, and lived together until August, 1907, when they separated. The ground alleged for divorce is adultery. The defendant

in her answer denies the allegation of adultery and pleads that plaintiff abandoned her in August, 1907, while she was sick in bed and refused to provide her with medical attention; and further alleges that in September, 1907, plaintiff commenced divorce proceedings against her making many charges against her character and conduct which were untrue; and that after all the evidence was introduced plaintiff dismissed his case. The answer also alleges that, on the day upon which they were married, plaintiff required and compelled defendant to enter into a certain agreement in writing whereby and according to the terms of which defendant was to procure a divorce from plaintiff and pay all the costs and expenses incident thereto; and that plaintiff was not to contest said suit, but in the contract agreed to let the same go by default in consideration of all which he was to pay her $1500, in monthly instalments of $50 each.

Plaintiff testified that prior to August 5, 1907, the time he left defendant, the two did not get along well together; that defendant was quarrelsome and wanted to fight; and that she blackened his eye, scratched him and spit in his face and committed other offenses. While the former divorce proceedings were pending the conduct of defendant was shown to have been of the most disgraceful character. She got drunk and said and did things too vile and disgusting to be repeated and such as no self-respecting female would have been guilty of saying or doing. The evidence is overwhelming that she visited a house well known and acknowledged by the proprietor to be a house of prostitution and that she committed adultery. While such has been the conduct of defendant, the testimony as a whole goes to show that plaintiff's conduct in so far as his habits were concerned as a whole was not bad. It is true he conducted a saloon, but it was not shown that he was a drunkard, and barring the statements of defendant, his manner of life was free from any

stigma of gross immorality. The defendant had been twice divorced according to her own testimony. She insinuated that it was through plaintiff's influence that she obtained a divorce from her last husband.

It was admitted by plaintiff's attorney during the trial that the parties had been cohabiting as man and wife up to the time of their marriage. And it is to be understood that their marriage was merely formal and not entered into in good faith with an understanding that the relation should continue. The evidence of this fact is found in the writing entered into on the day of their marriage which was introduced in evidence and which reads as follows: "This agreement, made and entered into this 10th day of December, 1906, by and between Rosa Cooper, of Kansas City, Missouri, party of the first part; and Patrick H. Donohue, of Kansas City, Missouri, party of the second part, witnesseth: 1. That as an inducement to said second party to marry the said first party, Rosa Cooper is willing to accept $1500, payable monthly, in lieu of all rights she may be entitled to as the wife of said second party; and is further willing to procure a divorce from said first party and to pay costs of such proceedings: 2. That said second party is willing to marry said first party on the above terms; Now therefore: It is hereby agreed by and between the party of the first part and the party of the second part that they will have a marriage ceremony performed making them man and wife, on or about Monday, December 10, 1906; that said Donohue agrees to pay the said Rosa Cooper $50 each and every month until the sum of $1500 has been paid, which said sum the said first party agrees to accept in full, and in lieu of all her right, title and interest in the property, real or personal, or income of the said second party, hereby expressly waiving rights which would otherwise accrue to her as the wife of said second party; and it is further agreed that the said Rosa Cooper shall procure

a divorce from said Donohue and that she shall pay all expenses and costs incident thereto; and that the said Donohue will not contest said divorce suit, but on the contrary agrees hereby to let the same go by default. In witness whereof we have hereunto, and to a duplicate copy hereof, set our hands this —— day of December, 1906.

"Mrs. Rosa Cooper,<br>"P. H. Donohue."

"Signed in duplicate."

The result shows that defendant did not attempt to avail herself of the so-called contract, which the court would have disregarded for two reasons, viz.: First; that it was void as against public policy. Second; because it would show collusion.

Notwithstanding plaintiff and defendant entered into the marital relation with the understanding that it should not be permanent, but be dissolved at the instigation of the defendant, the marriage carried with it all the rights and duties imposed by the law of the land. The motives that induced the marriage did not render it void; it was just as binding as a matter of law as if it had been the result of the utmost good faith. [Ryan. v. Ryan, 137 S. W. 1014.] And because the parties were living apart at the time of defendant's offense cannot be taken as a plea of justification on the part of defendant. To so hold would be putting a premium on immorality and infidelity.

Notwithstanding we find that the defendant is to be condemned for her conduct as a wife, the conduct of the plaintiff must determine his right to a decree of divorce. The law has wisely provided that a party invoking the power of the court must come with clean hands. The law imposes upon the plaintiff the burden of satisfying the court that he has lived up to his obligations as a husband. The record discloses that plaintiff has not "faithfully demeaned himself and discharged all his duties as the husband of the defend-

ant and at all times treated her with kindness and affection.'' During the short time that elapsed from the date of the marriage until plaintiff left defendant, it seems that they did not live together in harmony. All the evidence shows that they quarreled and were in almost constant disagreement, mostly through the fault of defendant. While such a situation may perhaps have justified plaintiff in not co-habiting with defendant, it in no sense afforded him an excuse, as long as the relation of husband and wife existed, of wholly abandoning her and leaving her without the necessities for her support. At or about the time plaintiff abandoned defendant she was suffering from an affliction that required a surgical operation to remedy, and had to be taken to a hospital for that purpose. She remained in the hospital for many weeks without sufficient funds to pay for necessary service and was compelled to sell some of her personal effects for the purpose. Her condition was known to the defendant, but he failed to aid her in any way.

The record further discloses that defendant had been twice divorced before her marriage to plaintiff, and her statement that he was the cause of her alienation from her last husband stands uncontradicted, and the record further discloses that plaintiff at the time of the marriage and up to the time of his abandonment of defendant knew full well that she was not virtuous and that she was generally immoral, and when he married defendant, the writing entered into between them, shows beyond all question that he did not marry her in good faith, and that he did not intend to perform the duties of a husband; and that he was looking for an opportunity to free himself from the relation, as is evidenced by the fact that he employed witnesses to watch defendant for the purpose of catching her in some act that would afford him a pretext to get a divorce. He succeeded in his purpose and his wife was caught under circumstances that in-

dicated she had committed adultery with a certain individual. This individual was one of his patrons and drank at his bar both before and afterward. He took no offense at the man or his conduct, but on the contrary was gratified at the result. He was asked: "The fact is you were glad to find out he had been up there with your wife weren't you?" He answered: "Well, I was glad to find out that she had made a bad break of that kind and I could bring it on her." The plaintiff placed himself in the attitude of rejoicing because the infamy of his wife had been discovered in such a way that he could have the evidence of her misconduct to use, we are justified in presuming, in procuring a divorce.

Under the circumstances we have related, is the plaintiff both an injured and innocent party, coming into court with clean hands with the right to appeal to the court for the wrongs his wife had committed against him? We do not believe that he was either the injured, or the innocent party. He was not injured, because he never as a fact took upon himself the obligations of the marital relation, and he was not innocent, because he did not comply with the conditions of that obligation. He entirely failed in so doing when he stood by without extending a helping hand to his wife when she was sick and in want of necessities as he should have done. He had no right to abandon her as long as she was his wife, however erring she may have been, and until the bonds of matrimony had been severed by competent authority she was entitled to receive at his hands the necessities for her support. We have great respect for the judgment of the able and upright judge who rendered the decree, but we feel impelled to come to a different conclusion and feel that it is our duty to deny plaintiff's petition for a decree of divorce, and we hereby reverse the judgment. All concur.