R. F. JONES v. MAUDE E. JONES, Appellant.—30 S. W. (2d) 49.

Division One, July 9, 1930.

*Moore & Moore* for appellant.

*Rufe Scott* for respondent.

SEDDON, C.—This action is one involving title to eighty acres of land in Stone County, Missouri. The plaintiff (respondent) and the defendant (appellant) were formerly husband and wife. On October 4, 1923, by decree of the Circuit Court of Stone County, the bonds of matrimony existing between plaintiff and defendant were dissolved and the parties were divorced, plaintiff being adjudged to be the innocent and injured party. At and prior to the entry of said divorce decree, plaintiff and defendant were the owners of an estate by the entirety in and to the eighty acres of land now in controversy. By the instant action, commenced in the Circuit Court of Stone County on April 6, 1926, plaintiff seeks a judgment divesting the defendant of any right, claim, interest, or title in and to the land in controversy, and declaring plaintiff to be the sole and absolute owner thereof in fee simple.

The gravamen of plaintiff's cause of action is thus stated in the petition:

"Plaintiff states that on March 4, 1918, he purchased from John R. Young and wife, the following described real estate, to-wit: The east half of the South East Quarter of Section Seven (7), in Township Twenty-six (26), Range Twenty-three (23), in Stone County, Missouri; that he paid, as consideration for said real estate, the sum of $3200, and that the said John R. Young and wife executed a warranty deed to said lands, conveying same to plaintiff and defendant, Maude E. Jones, who was at that time the wife of plaintiff, said deed of conveyance being recorded in Book No. 45 at page 379, of the (deed) records of said county.

"That the defendant herein was named as one of the grantees in said deed for the reason that she was the wife of plaintiff at the time, and at the instance and request of plaintiff, because she was his wife and he desired to make provision for her in case of his death while the marriage relation existed, and for no other purpose, defendant having furnished no part of the said consideration of $3200 paid for said lands.

"Plaintiff further states that on the 4th day of October, 1923, by decree of the Circuit Court of Stone County, Missouri, at the October Term, 1923, thereof, he was divorced from the defendant, and that plaintiff was by said judgment and decree adjudged to be the innocent, injured and aggrieved party, and was by said decree restored to all the rights of a person sole and unmarried.

"That defendant executed a contract with plaintiff, whereby all the property rights, including the above described real estate, were settled and adjusted between plaintiff and defendant; that said settlement was based upon a valuable consideration, which consideration was paid by plaintiff to defendant in money, and defendant thereby parted with all her right, title and interest of, in and to said real estate, but that defendant has failed to execute to plaintiff a deed of conveyance as evidence of the said settlement.

"Plaintiff says that he is the sole owner of said real estate and that defendant has no interest therein.

"Wherefore, plaintiff prays the court for an order and decree that the defendant be divested of all right, title, interest and claim to said real estate, or any part thereof, and that plaintiff be adjudged and decreed the absolute owner thereof in fee simple, and for such other orders touching the premises as to the court may seem meet and proper."

The defendant, in due time, filed an answer, and a (so-called) counterclaim, or cross-petition. The answer admits that, on October 4, 1923, plaintiff was divorced from defendant by decree entered in the Circuit Court of Stone County, and that such decree adjudged

the plaintiff to be the innocent and injured party; avers that, on March 4, 1918, plaintiff and defendant purchased from John R. Young and wife the land in controversy, as described in the petition, and that the greater part of the purchase price therefor was paid out of funds belonging to the defendant, and that title to said land was taken in the names of plaintiff and defendant, as tenants by the entirety; denies that plaintiff is the sole owner of said real estate, but avers that plaintiff and defendant are tenants in common thereof; avers that, on May 17, 1923, plaintiff and defendant entered into a certain written contract and agreement, wherein they purported to settle and adjust the rights and interests of the parties in and to certain personal property and chattels, but denies that such contract and agreement affected the rights, titles, and interests of the parties in and to the real property owned by the parties as tenants by the entirety; alleges that said contract and agreement is violative of the Statute of Frauds, in that said contract, upon its face, does not purport to transfer to plaintiff any right, title, or interest of the defendant in and to said real estate; and avers that "one of the considerations for said contract is that defendant herein would not make any contest of the proceedings for divorce to be filed by plaintiff herein, nor ask any alimony or anything for her support, and which shows upon its face that one of the considerations and the element of the same was illegal, which makes the said contract void and of no force and effect in the premises." By way of cross-petition, defendant avers that she and plaintiff are tenants in common of the described land, and that plaintiff and defendant, respectively, is each the owner of an undivided one-half interest in fee therein; and that defendant desires partition of said real estate, according to the respective interests of the parties therein; wherefore, defendant prays partition and division of the described real estate according to the respective rights, titles, and interests of the parties therein, and, if partition and division in kind cannot be made without material injury to the rights of the respective parties, that the described real property be ordered to be sold, and that the proceeds of such sale be ordered to be divided between the parties according to their respective rights and interests therein.

No reply is shown by the record to have been filed by plaintiff.

A trial of the action before the court, without the aid or intervention of a jury, resulted in a judgment, wherein the court found the facts, as alleged in the petition, to be true; that plaintiff is the sole owner of the described real estate; and that defendant has no right, title or interest in said real estate, or any part thereof; wherefore, it was ordered, adjudged and decreed that defendant be divested of all right, title, interest, or claim in and to the aforesaid real estate; that plaintiff be vested absolutely in fee simple with all right, title and interest in and to said real estate; and that defend-

ant be forever barred and precluded from thereafter setting up any title, interest, or claim to said real estate, or any part thereof, adversely to the plaintiff.

After a timely, but unavailing, motion for new trial, the defendant was allowed an appeal to this court from the judgment entered below.

It is uncontroverted upon the record that, on March 4, 1918, John R. Young and wife, by general warranty deed, conveyed to the plaintiff and defendant herein, R. F. Jones and Maude E. Jones (who were then husband and wife), as tenants by the entirety, eighty acres of land, described as the east one-half of the southeast quarter of Section 7, Township 26, Range 23, in Stone County, Missouri. Plaintiff and defendant, with their two minor children, resided upon the described land, and farmed the same, until the month of May, 1923, when domestic troubles occurred between the husband and wife. On or about May 17, 1923, the husband and wife separated, and the wife, with the two minor children, left the State of Missouri and went to the State of Illinois, where the wife resided for a time. About the time of their separation, plaintiff and defendant entered into a written contract and agreement, purporting "to finally settle and adjust all their property affairs." The original contract and agreement (according to the testimony of plaintiff) has been lost or destroyed, but a purported copy of such contract and agreement was proffered in evidence by the defendant on the trial of the instant action, without objection by plaintiff, and was identified by plaintiff as being a copy of the original contract and agreement. The copy of the contract and agreement, so proffered in evidence by defendant, reads as follows:

"Marionville, Missouri, May 17th, 1923.

"This contract and agreement made and entered into this 17th day of May, 1923, by and between R. J. Jones and Maude Jones, witnesseth: That whereas the said parties are husband and wife, and have separated and can no longer live together as such, and in order to forever finally settle and adjust all their property affairs, agree as follows: Maude E. Jones is to have 2 sows, and 10 pigs, one mare and buggy and harness, and all the chickens and ducks, all the corn, and kitchen cabinet, and dishes, and one-half of all the bed quilts, and all her personal apparel, and $800 in cash, said cash to be paid when R. J. Jones procures a divorce, and Maude E. Jones agrees not to make any contest nor ask any alimony or anything for support, and also agrees not to buy anything on credit, and have it charged to R. J. Jones.

"It is agreed and understood that Maude E. Jones is to have control of the children, Mary Jones and Lloyd Jones. Mrs. Maude E. Jones is to care for and support the children (two). R. J. Jones

agrees to bring suit for divorce in the August Term of the Circuit Court of Stone County, Missouri. The $800 is to be left in the Citizens Bank of Marionville, Mo., to be paid to Maude E. Jones when the decree of divorce is granted. Maude E. Jones agrees to give possession of all property by June 1st, 1923.

> "R. J. JONES,
> "MAUDE E. JONES.

"Signed and subscribed to before me, a Notary Public, this 17th day of May, 1923.

> "(Seal) R. C. TURRENTINE,
> "Notary Public.

"My commission expires August 29, 1926."

Plaintiff testified that his true initials are "R. F.," and that the initials "R. J.," as used in said contract, was an error on the part of the scrivener who prepared the original instrument, or who made the copy of the original instrument.

Concurrently with the execution of the aforesaid contract, the husband and wife made and executed their promissory note for $800, together with a deed of trust upon the land in controversy, securing payment of said promissory note, upon which note and deed of trust the husband and wife borrowed $800 from a party by the name of Wilson. The $800 so borrowed from Wilson, together with the original contract and agreement of May 17, 1923, were placed in escrow with the Citizens Bank of Marionville, to be held by the bank until the rendition of a decree in the action for divorce to be commenced by the husband, R. F. Jones, against his wife, Maude E. Jones, at which time the $800 was to be paid over by the bank to defendant herein, Maude E. Jones, pursuant to the terms of the written contract and agreement of May 17, 1923. The defendant herein, Maude E. Jones, made no appearance in the divorce action instituted by her husband, R. F. Jones, and she did not contest or defend against the divorce action. Immediately upon the rendition of the decree of divorce by the Circuit Court of Stone County on October 4, 1923, the sum of $800 was paid over by the bank to the defendant, Maude E. Jones, pursuant to the written contract and agreement of the parties, dated May 17, 1923. Some time thereafter, plaintiff satisfied the deed of trust against the land and paid the promissory note for $800 secured thereby, whereupon he demanded from defendant the execution and delivery of a deed, purporting to convey to plaintiff all of defendant's right, title, claim and interest in and to the land in controversy. Upon defendant's refusal to execute and deliver such a deed of conveyance to plaintiff, the instant action was commenced by plaintiff.

Evidence was adduced tending to show that the consideration paid to John R. Young by R. F. Jones and Maude E. Jones, hus-

band and wife, for the conveyance of the land in controversy to the latter parties, was $3200, and there was evidence that the reasonable market value of the land in controversy was $2000 to $2500 at the time of the trial of the instant action. There was evidence on behalf of defendant that she had invested $800 in the purchase of the land, which sum theretofore had been given to her by her father.

I. The appellant (defendant) assigns error in the finding and judgment of the circuit court, the effect of which finding and judgment is to enforce, and to give validity to, the written contract entered into between plaintiff and defendant, dated May 17, 1923. It is the contention of appellant herein that such contract and agreement is against the public policy of this State, and, hence, is illegal and absolutely void, and that such void and illegal contract affords no ground for plaintiff's cause of action, and is insufficient, because of its illegality, to support the judgment of the circuit court herein.

There can be no question but that the written contract and agreement of May 17, 1923, discloses upon its face that it was entered into between the parties hereto, while they were husband and wife, for the object of promoting and facilitating a divorce, and in furtherance of the bringing or instituting, by the husband, of an action for divorce. As a consideration for such contract, the wife, Maude E. Jones (the defendant and appellant herein), specifically agreed "not to make any contest (to the purposed divorce action), nor ask any alimony or anything for support." Furthermore, it is specifically provided in the said contract that "Maude E. Jones is to care for and support the (two minor) children," born of the marriage of the parties, the obvious purpose and object of such agreement being to relieve the father (plaintiff herein) of his moral and legal obligation to provide for and support his minor children. Such a contract is universally held to be illegal, void and unenforcible, as being against sound public policy.

In 13 Corpus Juris, 463, 464, the settled rule of law respecting such a contract is thus stated: "If the object of a contract is to divorce man and wife the agreement is against public policy and void. The reason of the repugnance with which the law views all contracts with the purpose of dissolving the marriage relation may be found in its regard to virtue, the good order of society, the welfare of the children as the fruit of the marriage, and the sacred character of the conjugal relation. It will not suffer husband and wife to dissolve of their own accord a contract which is in its nature indissoluble except so far as the legislative will has allowed it, and then only by the method authorized. To induce a wife to sue for

a divorce by a promise on the part of the husband to remunerate her for it, or for a husband and wife to agree that one of them shall bring a suit for a divorce and the other shall not defend, is against the law, which recognizes and upholds the sanctity of marriage and is void. . . . Contracts so framed as to have effect only on condition that a divorce between the parties should be granted are held illegal, as their object is to interest the party to be benefited in procuring or permitting a divorce. A contract between a husband and wife entered into for the object of promoting a divorce will not be relieved of its illegality by the fact that the party instituting the divorce proceedings had legal grounds for a divorce. The fact that such a contract is supported by other and valid considerations will not relieve it of illegality.''

In 13 Corpus Juris 490, it is said: ''A contract by a parent having for its object the evasion of his moral and legal responsibility to protect and care for his children is against public policy.''

In Blank v. Nohl, 112 Mo. 159, 167, et seq., wherein plaintiff sought to obtain (in a probate court) the allowance of a demand against the estate of her deceased husband, founded upon a contract between plaintiff and her late husband made in furtherance of a divorce, this Court, en banc, thus expressed the public policy of this State respecting such a contract: ''The question is, whether the agreement violates a sound public policy. Marriage is more than a mere civil contract. It is a matter of State concern; and, when the marital relation is once created, it cannot be dissolved by any agreement of the parties. It can be dissolved, and dissolved only, in the manner and for the causes allowed by law. Courts sitting in divorce cases are bound to protect the public interests as well as the rights of the parties themselves; and, hence, it is that before a party is entitled to a divorce it must be made to appear by proof that he or she is the innocent and injured party, and this, too, though there is a default on the part of the other party. For like reasons the law is well settled that an agreement having for its object and consideration the granting of a divorce is illegal and void. Says Bishop: 'But the law does not favor divorce, and permits it only for approved causes, and on sentence from duly established public authority. Therefore, any agreement for divorce, or any collateral bargaining promotive of it, is unlawful and void.' [2 Bishop on Marriage & Divorce (Ed. 1891) sec. 696.] . . . But a bargain that there shall be no defense is collusion, and any promise founded on such an undertaking cannot be enforced. [2 Bishop on Marriage & Divorce 6 Ed., sec. 239.] . . .

''The authorities are numerous to the effect that any agreement that the defendant in a divorce suit will not make a defense; or having for its object the dissolution of a marriage contract, or designed

to promote and facilitate a divorce is void, because opposed to the policy of the law; and any promise founded on such an agreement is also void, and should not be enforced'' (citing numerous cases).

In Beardsley v. Bass, 287 Mo. 393, 399, 229 S. W. 1092, 1094, wherein plaintiff (respondent here) sued the administrator of her deceased husband's estate for the specific performance of a written contract made and entered into between plaintiff and her late husband in furtherance of a divorce, GRAVES, J., in a separate concurring opinion expressing the views of a majority of this Division of this court, after quoting approvingly from Blank v. Nohl, supra, said: ''This is the public policy of Missouri succinctly stated, and we do not understand that respondent's counsel seriously controverts this view. They contend that the contract set out in the petition does no violence to this rule of law (as stated in Blank v. Nohl, 112 Mo. l. c. 169). . . . The particular clause (of the contract there in issue) reads: 'Unless the said party of the second part should decide that she wishes to remarry, in which case *it is fully agreed that the said party of the first part shall secure a divorce on the grounds of desertion* and said payments to be made by him shall cease from the date that he is notified that the said party of the second part wishes to marry again.' The italics, supra, are ours. Note the use of the word 'shall' as used, supra. There is nothing left (if the contract is to be lived up to) but 'for the husband to sue the wife for divorce whenever she notifies him that she desires to marry again. But this is not all. No fair interpretation of this contract can exclude the idea that the parties were likewise agreeing that there should be no defense made to the suit which the contract compelled the husband to bring. This idea is not expressed in definite terms, but the whole tenor of the instrument so shows. This clause, in my judgment, voids the whole contract. I do not believe that it is severable from the remaining clauses. It constitutes a vital portion of the agreement. It gives tinge and color to the whole instrument. It was 'designed to promote and facilitate a divorce.' To the wife it says,. 'All you have to do is say you want to marry again, and your husband must sue you for divorce.' *Inter alia,* it further indicates to her, 'But if he does, you must not defend.' I feel that this contract cannot be upheld, and that the judgment in the circuit court is wrong and should be reversed and judgment entered here dismissing plaintiff's bill.''

In an early case, Speck v. Dausman, 7 Mo. App. 165, 168, wherein a husband and wife had contracted in writing that the husband would convey to a named trustee certain real estate, to be held in trust for the use and benefit of the wife during her life, out of the rents of which real estate the wife was to support a daughter born of the marriage, and that the wife should obtain a divorce from the

husband on the condition that the husband should be freed from all claims of the wife for alimony and maintenance, and that the written contract between husband and wife, together with all deeds made by the husband pursuant thereto, should be deposited with a third party and held in escrow until the termination of the divorce suit, the St. Louis Court of Appeals ruled the said contract to be illegal and unenforcible, as being against public policy. Said that court, speaking through BAKEWELL, J.: "It is quite settled that contracts between husband and wife, so framed as to have effect only on condition that a divorce should be granted, are contrary to public policy, and will not be enforced by the courts. Their tendency is to interest the party to be benefited in procuring or permitting a divorce. . . . Such an agreement is regarded in law as a fraud upon the court and upon the administration of justice, and no action will lie upon it. [Citing cases.] The fact that the papers in this case were in escrow, and the deeds and agreement were not to be delivered by the person in whose hands they were left, until a decree was obtained according to the terms of the agreement, in no way changes the illegal aspect of the transaction. The delivery had a relation back to the date of the agreement, and the pretended contract which the circuit court was asked to enforce was made, not after the divorce, but whilst the suit was pending."

Said the Kansas City Court of Appeals, in Banner v. Banner, 184 Mo. App. 396, 400: "A contract not to defend a divorce suit is void as against public policy. [2 Bishop on Mar. Div. & Sepr., sec. 702.] So also is a clause in a contract which will result in facilitating a divorce. [Phillips v. Thorpe, 10 Ore. 494; Shirk v. Shirk, 75 Mo. App. 578.] The public is a silent party to the marriage contract, and the parties thereto are without authority to enter into a contract which will bind the public. [2 Bishop on Mar. Div. & Sepr., sec. 702.] So also is a clause in a contract which will result in facilitating a divorce. [Phillips v. Thorpe, 10 Ore. 494; Shirk v. Shirk, 75 Mo. App. 578.] The public is a silent party to the marriage contract, and the parties thereto are without authority to enter into a contract which will bind the public. [2 Bishop on Mar. Div. & Sepr., sec. 703.]"

See, also, Donohue v. Donohue, 159 Mo. App. 610; McDonald v. McDonald, 175 Mo. App. 513; Westfall v. Westfall, 208 Mo. App. 656; and In re Means' Estate (Mo. App.), 284 S. W. 186.

In view of the judicial expressions and rulings above quoted and cited, which manifest the public policy of our State, it is clear to our minds that the contract of May 17, 1923, made and entered into by and between the plaintiff and the defendant herein, while they were husband and wife. was a collusive agreement, the plain object and consideration of which contract was to promote and facilitate a divorce, and to prevent the wife, Maude E. Jones, from contesting,

1048

or defending against, the suit for divorce which the husband specifically agreed to bring and institute against the wife in the Circuit Court of Stone County. It is equally clear to us that such contract is illegal and void, because in contravention of the public policy of our State, and that no right of action exists, in favor of either party, for the enforcement of the whole or any part of said contract.

But it is argued and contended by respondent that the appellant, Maude E. Jones, is estopped to assert the illegality and invalidity of the aforesaid contract and agreement of May 17, 1923, inasmuch as she has accepted and retained the $800 paid to her in pursuance of the terms of said contract. The contention of respondent is thus stated in his brief filed herein: "The appellant cannot accept one provision of the contract and repudiate other provisions of it. She received the $800, and is now claiming the undivided one-half interest in the land as tenant in common by virtue of the decree of divorce, which she says was rendered under a void contract." The argument and contention of respondent is against the weight of judicial authority.

The prevailing and general rule is thus stated in 13 Corpus Juris, 492-496: "No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim. . . . The law in short will not aid either party to an illegal agreement; it leaves the parties where it finds them. The general rule is the same both at law and in equity, and whether the contract is executory or executed. The object of the rule refusing relief to either party where the contract is executed is not to give validity to the transaction, but to deprive the parties of all right to have either enforcement of, or relief from, the illegal agreement. In such cases the defense of illegality prevails, not as a protection to defendant, but as a disability in plaintiff. The court does not give effect to the contract, but merely refuses its aid to undo what the parties have already done. While it may not always seem an honorable thing to do, yet a party to an illegal agreement is permitted to set up the illegality as a defense, even though it may be alleging his own turpitude."

And in 13 Corpus Juris 506, 507, it is said: "An agreement void as against public policy cannot be rendered valid by invoking the doctrine of estoppel. While there are cases to the effect that, as long as a party retains the benefit of an agreement he will not be allowed to avail himself of its illegality, they are contra to the weight of authority and are opposed to the general rule already stated, it being ordinarily held that, where the contract is void because of illegality,

its repudiation by one party does not give the other a right to have restored to him what he parted with under it.''

Inasmuch as respondent's cause of action is predicated and founded upon the illegal and void contract of May 17, 1923, it follows that the trial court erred in entering the judgment *nisi*, the effect of which judgment is to give enforcement to such illegal and void contract.

II.  It is uncontroverted upon the record herein that plaintiff and defendant were the record owners, as tenants' by the entirety, of the eighty acres of land in controversy, at the time the plaintiff procured the decree of divorce from the defendant in the Circuit Court of Stone County.  The legal effect of the decree of divorce was to destroy the estate by the entirety, and to vest in the parties to the instant action, as tenants in common, the legal title to the real estate in controversy, each party being seized and vested of a separate moiety therein.  [Russell v. Russell, 122 Mo. 235, 238; Joerger v. Joerger, 193 Mo. 133, 139; Brewing Co. v. Saxy, 273 Mo. 159, 164; State ex rel. Roll v. Ellison, 290 Mo. 28, 32: Aeby v. Aeby (Mo. Sup.), 192 S. W. 97, 99; Funk v. Funk, 205 Mo. App. 178, 183.]  Upon the dissolution of the marital status, by the divorce decree, each of the parties immediately was vested with an undivided one-half interest and moiety in and to the land in controversy, as tenants in common, and each had a right to partition thereof.  [Cases last cited.]

Defendant (appellant), by way of cross-petition filed as part of her answer herein, prays that partition be ordered to be made of the land in controversy between the parties hereto, as tenants in common of the land.  Our Code of Civil Procedure (Sec. 1232, R. S. 1919) permits and authorizes a defendant to make (in the answer) ''a statement of any new matter constituting a defense or counterclaim.''  The code furthermore authorizes the use and filing of a counterclaim by a defendant when it is one existing in favor of a defendant and against a plaintiff, and it states ''a cause of action . . . connected with the subject of the action.''  [Sec. 1233, R. S. 1919.]  Regardless of whether or not the cross-petition of defendant herein technically may be denominated a ''counterclaim'' within the definition of the code (and we think it may be so denominated), nevertheless, we are of opinion that the cross-petition of defendant is germane to plaintiff's petition, and that the cause of action stated in defendant's cross-petition is ''connected with the subject'' of plaintiff's action, which subject is the land in controversy.  Therefore, we deem the cross-petition of defendant to be available and cognizable as a proper

and appropriate pleading in the instant action, and to entitle the defendant to the affirmative relief prayed therein. [*Vide,* Viehmann v. Viehmann, 298 Mo. 356, 363; Fulton v. Fisher, 239 Mo. 116, 130.] The only parties interested in the land in controversy are before the court in the instant proceeding, each asserting a right, claim, title and interest in and to the land constituting the subject-matter of the proceeding. Under such circumstances, where (as here) the court has jurisdiction both of the parties and of the subject-matter, it is the uniform tendency of the judiciary, in order to avoid circuity of action and a multiplicity of suits, to exercise and retain jurisdiction of the cause or proceeding until the rights of the parties in the subject-matter of the cause or proceeding are fully adjudicated, and until full and complete relief is awarded, according to the rights of the parties as presented by the pleadings.

It is accordingly ordered that the judgment *nisi* be reversed, and that the cause be remanded to the Circuit Court of Stone County with directions to deny to plaintiff the relief prayed in his petition, and to proceed to make partition of the land in controversy between plaintiff and defendant, as tenants in common thereof, pursuant to, and in accordance with the prayer of, defendant's cross-petition, or (so-called) counterclaim. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.