251 S.W.2d 78 (1952)
BLOSS
v.
BLOSS et al.
No. 42816.
Supreme Court of Missouri, Division No. 1.
September 8, 1952.
Lewis F. Randolph, St. Joseph, for appellant.
Johnson E. Story, Cameron, O. J. Adams, Kingston, Robison & Miller, Maysville (Robison & Miller, Maysville, on the brief), for respondents.
VAN OSDOL, Commissioner.
In this action plaintiff, Gladys I. Bloss, seeks to set aside a separation agreement; to set aside a deed executed by her and her former husband, defendant Lawrence E. Bloss, to defendant Robert Bloss, father of the husband Lawrence; to partition the described land; and to restore to plaintiff an undivided interest in personalty. Prior to the execution of the deed, the record title to the described land, one hundred sixty acres in Caldwell County, was in Lawrence E. Bloss, defendant, and Gladys I. Bloss, plaintiff, who were then husband and wife. The conveyance was made pursuant to a contract or separation agreement between the parties, plaintiff Gladys and defendant Lawrence. The trial court, having heard the evidence, found and rendered judgment for defendants. Plaintiff has appealed.
Plaintiff and defendant Lawrence were separated in early 1950. Plaintiff engaged *79 counsel and instituted a divorce proceeding. April 14, 1950, during the pendency of the divorce action and just prior to the rendition of a decree of divorce, Gladys and Lawrence entered into the separation agreement, the agreement reciting that the parties had encountered marital difficulties and were living separate and apart; that an action for divorce was pending; that they recognized there was no possibility of reconciliation; and that they desired to finally and completely settle their property rights. The instrument further recited,
"The parties have in no manner agreed upon the merits of any controversies existing between them with respect to the rights of either party to obtain a divorce from the other, or to offer and sustain any defense, or to offer any inducements to the other to obtain or not to obtain a divorce. It is understood and agreed, however, that either party may take whatever action he or she desires with respect to the action for divorce now pending.
"The sole purpose of this agreement is to define and determine the respective property rights of the parties and their financial rights and liabilities."
In stipulating the settlement of their property rights, the parties agreed as follows,
"In full, complete and final discharge of all the obligations of debts, legal, equitable or otherwise, now existing or hereafter to exist on the part of the husband to support and maintain the wife, or to become responsible for any of her obligations for sustenance or for necessaries or for alimony, attorney's fees, support and statutory rights, including dower, and statutory rights of allowance, the husband agrees to pay and the wife agrees to accept the sum of Sixteen Hundred and Seventyfive Dollars; and the wife agrees to join with her husband in the execution and delivery of a General Warranty Deed covering and conveying the (described) property now held by them as husband and wife to Robert Bloss * * *.
"For the considerations herein named the parties expressly agree that each shall have in their own and sole right all property of every kind and character not herein before expressly provided for, but in addition the wife hereby relinquishes to and assigns to the husband all right, title and interest she has or may have in six government bonds now presently in the joint names of the husband and wife; and each party does now hereby forever acquit, discharge and release the other and his or her estate from each and every all and singular rights, interests and demands which either might have or claim or demand against any property now or hereafter owned by either."
Plaintiff-appellant alleged, and herein contends, the evidence conclusively shows the agreement and the conveyance were procured in the consummation of a scheme and design to defraud plaintiff of her interests in the described land and in described personalty; the contract and the conveyance were void because without consideration; the contract was entered into collusively to facilitate a divorce, and was consequently void because against public policy; and the agreement (and the conveyance pursuant thereto) was void because unfair, unjust and inequitable to plaintiff. Plaintiff-appellant asserts the amount, $1,675, which she received in settlement of her property interests and marital rights, was much less than the value of her interest in the land, the title to which had been vested in her and her husband by the entirety. Plaintiff-appellant further alleged and testified that she and her husband, working together, had accumulated the valuable personalty, some of which had been purchased by her with her own money, in all of which personalty she should now have an undivided half interest determined, adjudged and set over to her.
"Under the law of Missouri, as it exists at present, both husband and wife, being sui juris, may make a valid and binding agreement to a property settlement in contemplation of a divorce without submitting the same to the court which may thereafter *80 hear and determine all questions in respect to the divorce." Dorsett v. Dorsett, 232 Mo.App. 126, 90 S.W.2d 188, 194; State ex rel. Green v. James, 355 Mo. 223, 195 S.W.2d 669; Gaede v. Smith, 354 Mo. 738, 190 S.W.2d 931; Bishop v. Bishop, Mo.App., 162 S.W.2d 332. However, the authorities are numerous to the effect that any agreement that the defendant in a divorce action will not make a defense, or any agreement having the objective of dissolution of marriage, or designed to promote and facilitate a divorce, is void because against public policy. Blank v. Nohl, 112 Mo. 159, 20 S.W. 477, 18 L.R.A. 350. See also Gardine v. Cottey, 360 Mo. 681, 230 S.W. 2d 731, 18 A.L.R.2d 1100; Jones v. Jones, 325 Mo. 1037, 30 S.W.2d 49; Welsh v. Welsh, 230 Mo.App. 1006, 93 S.W.2d 264; In re Means' Estate, Mo.App., 284 S.W. 186; Speck v. Dausman, 7 Mo.App. 165; 17 C.J.S., Contracts, § 235, pp. 616-618. And even though an agreement in settlement of property rights by which a wife releases rights due to the marital relation may not be collusive, yet such an agreement should be free of fraud; supported by a valid consideration, and should be fair, just and equitable. Johns v. McNabb, Mo. Sup., 247 S.W.2d 640; Gardine v. Cottey, supra; In re Woods' Estate, 288 Mo. 588, 232 S.W. 671; Speiser v. Speiser, 188 Mo. App. 328, 175 S.W. 122.
Plaintiff Gladys and defendant Lawrence had been married June 28, 1936. Three children were born to the marriage. Lawrence and Gladys went to live with the husband's parents, defendants Robert and Nellie Bloss, upon their rented farm. The farm involved in this litigation was bought in 1940 for $4,000. Expert witnesses were of varied opinions of the value of the land at the time of the conveyance in 1950. Witnesses for plaintiff testified that in their opinion the land was then worth $9,600. Witnesses for defendants put its value at $5,600. Plaintiff testified that she and her husband worked on the farm and paid for it. Title, however, was taken in the name of defendant Robert and his wife, defendant Nellie. The farm was stocked with cattle, hogs and horses, which personalty, plaintiff testified, had been accumulated by and belonged to her and defendant Lawrence. She also stated the chickens on the Bloss farm were her property; and she said she had bought and paid for a radio, a stove, a refrigerator, a washing machine and some bedroom furniture used in the Bloss household.
August 14, 1943, Robert and Nellie executed a deed, reciting a consideration of "one dollar and love and affection" to defendant Lawrence and plaintiff Gladys. The conveyance was not recorded until January 30, 1946. Robert, the father, also had a bank account in his own name until 1942, when he caused the individual account to be changed to the joint account of himself and Lawrence.
On the day the decree of divorce was granted, April 14, 1950, plaintiff and defendant Lawrence entered into the separation agreement, and executed and delivered the contested conveyance to defendant Robert, and plaintiff's counsel received the check for $1,675. Plaintiff and her counsel cashed the check the following day and plaintiff received and has retained the proceeds. Plaintiff testified she was not then satisfied with the contract or with the amount, $1,675, which she received pursuant to the contract and upon the execution of the deed; but she explained that her counsel had told her that her husband had said that "unless I signed the agreement of settlement I couldn't get my divorce and if I did sign it I could get my divorce and my children in twenty days." Plaintiff told the trial judge, at the trial of the divorce action, that she was satisfied with the property settlement; but, at the trial of the instant case, plaintiff testified she was never exactly satisfied with the settlement but thought, "if I was going to get my children, why, it would be worth that." Although the decree of divorce was not introduced into evidence, we infer the custody of the children was granted to the father, defendant Lawrence.
Defendants introduced evidence tending to show that the husband's father Robert entered into a contract to purchase the described land in 1940 and made a down payment of $400, executing notes for the balance, $3,600, of the consideration. The father *81 borrowed the down payment, $400, securing the loan by mortgaging livestock. The father, defendant Robert, paid off the notes with moneys received from the sales of the products of the land and the increase of livestock, and the title, as stated, was vested in him and his wife Nellie. It may be readily inferred that defendants, father and mother of defendant Lawrence, were desirous that Lawrence and plaintiff should finally have the farm. They executed the conveyance of the land in 1943 to Lawrence and plaintiff, grantees, but the deed was not then delivered or recorded. There was evidence tending to show the father had advised his son Lawrence and plaintiff that the conveyance was not to be recorded until the death of the parents, grantors. The defendants' evidence supports the inference that defendants Robert and Nellie were, in effect, contemplating testamentary disposition of the farm by means of the unrecorded deed. The inference is clear that it was intended the father and mother were to have "a home" during their lives. In 1946 the father, who had been in ill health, became seriously ill and was hospitalized. Plaintiff importuned and induced the father to let her record the conveyance. Plaintiff "went and got the deed (of 1943) and had it recorded while I was sick abed. She said she was afraid they would have trouble if I died. * * * I was lying there too sick to know really what was going on. In fact I thought I was going to die." Likewise the joint bank account was the means by which the father Robert was intending to make provision "to pay expenses and take care of the family * * * if I would happen to die." The weight of the evidence supports the view that whatever household equipment plaintiff bought was paid for by money drawn from this joint account, or from the cash proceeds of sales of products of the Bloss farm.
Relating to the personaltythe defendants introduced evidence tending to show the personalty (including chickens) was the property of the father, acquired by him or accumulated on the farm through the several years. The plaintiff and defendants, Robert, Nellie and Lawrence, made their living from the proceeds of the sales of the products and the increase yielded by the farm and the livestock thereon. The father, although in ill health, did light work and attended "to the business." Defendant Lawrence helped take "care of the stuff." Plaintiff sometimes assisted her husband in the fields. Defendant Lawrence "got plenty pay. He got over half of it and after the children got bigger and had to be sent to school and clothed and fed they got practically all the profits."
In this case the separation agreement, on its face, does not appear to have been collusive. The parties, husband and wife, had separated, and no part of the agreement indicates the agreement was conditional upon the dissolution of the marital relation. See and contrast Jones v. Jones, supra. The testimony of the wife concerning what her counsel had told her would tend to indicate the husband was bargaining for a divorce as well as exercising duress, esspecially when the urgency and stress of the circumstances of the signing of the agreement and the execution of the deed are considered. But the fact that plaintiff received and retained the money, $1,675, paid over to her pursuant to the agreement, when she must have known the divorce decree theretofore rendered did not award the custody of the children to her, would seem to refute her testimony that she was induced to enter into the agreement and had joined in the deed because of a representation that her husband had said she could not otherwise have a divorce and the custody of the children.
The sum of $1,675 was not equal to the value of plaintiff's interest in the described land (even assuming the farm was worth only $5,600) if unquestionable title were considered as if it had been vested in Lawrence and plaintiff by the entirety. Moreover, giving full credence to the testimony of plaintiff, the plaintiff and her husband had valuable property interests in the personalty. Admittedly the provision of the agreement, by which the parties agreed that each should "have in their own and sole right all property" for which the agreement made no provision, would add nothing to the validity of the transaction. In re *82 Woods' Estate, supra. It is significant, however, that the personalty described in plaintiff's petition was not mentioned in the agreement purporting to completely settle the parties' property rights. Jones v. McNabb, supra. And plaintiff did not claim, either in her petition or by her testimony, any interest in the six government bonds (denomination not disclosed), which, by the agreement were relinquished to the husband.
Giving deference to the trial court's apparent view of the conflicting evidence relating to the ownership of the personalty, and relating to the circumstances of the execution, delivery and recording of the conveyance of 1943, neither plaintiff nor her husband had any interest in the described personalty; and their title to the described lands, at the time plaintiff joined in the conveyance to Robert, was doubtful and subject at least to an equitable claim of life estates in Robert and Nellie. Robert Bloss was sixty-nine years old in 1950. The record does not disclose the age of defendant Nellie. At the age of sixty-nine Robert's life estate in lands worth $5,600 would have been computed at something in excess of $2,000. Section 442.530 RSMo 1949, V.A.M.S. Examining the entire record from the standpoint of having given full credence to the defendants' evidence, we are unable to say the settlement and conveyance and their terms were not a fair, reasonable and equitable way to settle the property interests of the parties.
While we have the duties of determining the weight and value of the evidence and of making our own findings in this trial anew upon review of this action in equity, we as usual defer to the findings of the trial chancellor upon conflicting verbal evidence where, as here, we are not satisfied such findings were against the weight of the evidence. Giving deference to the trial chancellor's findings, we are of the opinion we should not hold that plaintiff has clearly established the right to the relief she seeks.
The judgment should be affirmed.
It is so ordered.
LOZIER and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.
All of the Judges concur.